JOSEPH SHAFFER, Plaintiff-Appellant, *v.* EARL THACKER CO., LTD., a Hawaii corporation; BARBARA THOMPSON; KING ESCROW SERVICE CORP., a Hawaii corporation; STEPHEN T. SAWYER; and HARRIET B. SAWYER, aka HARRIET BOUS-LOG, Defendant-Appellees, and KING ESCROW SERVICE CORP., a Hawaii corporation, Defendant-Interpleader, *v.* JOSEPH SHAFFER; EARL THACKER CO., LTD., a Hawaii corporation; BARBARA THOMPSON; STEPHEN T. SAWYER; and HARRIET B. SAWYER, aka HARRIET BOUSLOG, Interpleading Defendants

(CIVIL NO. 57588)

EARL THACKER CO., LTD.; STEPHEN T. SAWYER and HAR-RIET B. SAWYER, Plaintiffs, *v.* JOSEPH SHAFFER, Defendant

(CIVIL NO. 57189)

APPEAL NO. 10261

FEBRUARY 7, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Joseph Shaffer (Buyer) appeals the summary judgment entered in Civil No. 57588 dismissing his negligence claim against the sellers' brokers, defendants Earl Thacker Co., Ltd. (Thacker), and Barbara Thompson (Thompson).

The issue is whether Thacker and Thompson are entitled as a matter of law to a judgment that they are not liable to Buyer for the tort of negligent misrepresentation. We answer no and reverse.

Viewed most favorably to Buyer,[1] the relevant facts are as follows:[2] The property which is the subject of this appeal is a parcel of leasehold land located at 4157 Black Point Road, Honolulu, Hawaii (the "Property"). The Property has a residence on it and extends in a rough triangular shape to a point overlooking the sea. Sometime prior to June 1, 1978, Thacker and Thompson, a broker employed by Thacker, obtained a listing for the sale of the Property from the sellers. Thacker and Thompson advertised it for sale describing it as containing approximately 25,308 square feet.

On May 31, 1978, Buyer made a written offer to purchase the Property by way of a Hawaii Association of Realtors 1971 Standard Form Deposit, Receipt, Offer and Acceptance (DROA). The sellers counter offered, and Buyer accepted on June 3, 1978. The DROA set September 8, 1978 as the closing date but authorized the sellers' broker to delay the closing for 30 days. It specified that the Property is "approximately 25,308 sq. ft[.]" It required sellers "to show visible staking of boundaries or have property staked by surveyor" and to furnish Buyer a licensed abstractor's "Certificate of Title showing good title to the property or the interest to be conveyed vested in Buyer." If seller failed to deliver title as specified, Buyer at his option could terminate the agreement and have his deposits returned to him. It provided that "[t]his transaction shall be processed and closed in escrow by Bank of Hawaii."

Prior to Buyer's offer and again prior to Buyer's acceptance of the counter offer, Thompson represented to Buyer and Buyer's broker, Penny Bradley,[3] that the Ewa boundary of the sellers' Property was located along the hollow-tile wall; that there were no encroachments on the Property; and that the total area of the Property contained approximately 25,308 square feet.

Prior to the Buyer's acceptance of the counter offer, Thompson conducted a preliminary investigation with respect to the title to and boundaries of the Property and discovered no encroachments. How-

---

[1] *See Windward Partners v. Lopes,* 3 Haw. App. 30, 640 P.2d 872 (1982).

[2] On March 8, 1982 we issued an opinion in *Shaffer v. Earl Thacker Co., Ltd.,* 3 Haw. App. 81, 641 P.2d 983 (1982), in which we delineated the facts. We incorporate those facts in this opinion by reference.

[3] The DROA awarded Buyer's broker, Penny Bradley, a commission of 50% of the sellers' brokers' commission of 6% of the sales price.

ever, she had notice that the Policy of Title Insurance, dated May 9, 1977, obtained by the sellers when they purchased the Property, specifically excluded coverage for loss or damage caused by the "[l]ocation of the seaward boundary in accordance with the laws of the State of Hawaii[.]" Nevertheless, she did not inform Buyer, a California resident, of this boundary problem.

When the boundary survey was completed on September 13, 1978, it was discovered that the hollow-tile wall along the Ewa boundary encroached a total of 701 square feet upon the adjacent property. The survey also revealed that the Black Point Association swimming pool fence encroached upon the seaward corner of the Ewa boundary of the Property to the extent of 80 square feet. Thereafter, the sellers and Thompson represented to Buyer that the encroachment problems would be corrected and that good title to the 25,308 square feet would be conveyed.

However, these encroachment problems could not be remedied unless the location of the seaward boundary of the Property, which was disputed by the State of Hawaii under *In re Application of Ashford,* 50 Haw. 314, 440 P.2d 76 (1968), was adjusted resulting in a loss of approximately 3,800 square feet from the Property.

On December 13, 1978, Buyer rescinded the DROA and subsequently filed this action against sellers, Thacker, Thompson, and one other named defendant.[4] The complaint alleged, *inter alia,* that Thacker and Thompson negligently failed prior to advertising the Property for sale to investigate the status of its title, its true area, and the existence of encroachments affecting it, and negligently made misrepresentations to Buyer regarding the Property. It prayed for unspecified special and general damages.

In *Shaffer v. Earl Thacker Co., Ltd.,* 3 Haw. App. 81, 641 P.2d 983 (1982), we reversed the summary judgment in favor of sellers, Thacker, and Thompson. Upon remand, the lower court concluded that Thacker and Thompson did not owe to the Buyer the tort duties which Buyer claims they breached and again issued a summary judgment in their favor. On October 24, 1984, pursuant to Rule 54(b), Hawaii Rules of

---

[4]Defendant King Escrow Service Corporation was subsequently dismissed from the case by stipulation and order.

Civil Procedure (HRCP) (1981), a final judgment was entered, and Buyer's timely appeal followed.

The material elements of the tort of negligent misrepresentation are described in the Restatement (Second) of Torts (1977) as follows:

§ 552. *Information Negligently Supplied for the Guidance of Others*

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

§ 552A. Contributory Negligence.
The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying.

§ 552B. Damages for Negligent Misrepresentation

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Here, Buyer alleged a § 552 negligent misrepresentation rather than a § 525 fraudulent misrepresentation[5] or a § 552C innocent misrepresentation.[6]

The tort of negligent misrepresentation was recognized by the Hawaii Supreme Court in *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969) (title company retained by seller owes to buyer a duty of reasonable care in conducting and preparing a title search despite a lack of privity). We know of no valid reason why this tort should not apply to real estate brokers representing the sellers of residential real property.

We find additional support for our holding in Hawaii Revised Statutes (HRS) § 467-14 (1976 & Supp. 1984) governing the licensing and conduct of real estate brokers and salesmen, which provides in pertinent part as follows:

Revocation and suspension of licenses. The real estate commis-

---

[5] § 525. Liability for Fraudulent Misrepresentation

One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

§549. Measure of Damages for Fraudulent Misrepresentation

(1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.

(2) The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty.

[6] § 552C. Misrepresentation in Sale, Rental or Exchange Transaction

(1) One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

(2) Damages recoverable under the rule stated in this section are limited to the difference between the value of what the other has parted with and the value of what he has received in the transaction.

sion may revoke any license issued hereunder, or suspend the right of the licensee to use the license, for any of the following causes:

\* \* \*

(2) Making any misrepresentation concerning any real estate transaction;

(3) Making any false promises concerning any real estate transaction of a character likely to mislead another;

(4) Pursuing a continued and flagrant course of misrepresentation, or making of false premises through advertising or otherwise.

Similarly, § 16-99-3 of the Real Estate Commission Rules (1984) which have been adopted by the Real Estate Commission to clarify and implement HRS chapter 467 provides in pertinent part as follows:

*Conduct.* (a) To fully protect the general public in its real estate transactions, every licensee shall conduct business in accordance with this section.

(b) The licensee shall protect the public against fraud, misrepresentation, or unethical practices in the real estate field. The licensee shall endeavor to eliminate any practices in the community which could be damaging to the public or to the dignity and integrity of the real estate profession. The licensee shall assist the commission in its efforts to regulate the practices of brokers and salesmen in this State.

(c) The licensee shall ascertain and disclose all pertinent facts concerning every property for which the licensee accepts the agency, so that the licensee may fulfill its obligation to avoid error, misrepresentation, or concealment of pertinent facts.

\* \* \*

(e) The licensee shall recommend that title be examined, survey be conducted, or legal counsel be obtained when the interest of either party requires it.

Under Rule 56(c), HRCP (1981), Thacker and Thompson are not entitled to summary judgment unless the evidence in the record demonstrates as a matter of law that they are not liable to Buyer for the tort of negligent misrepresentation. Upon a thorough review of the record, we

conclude that the record does not demonstrate their entitlement.[7] The alleged fact that the Buyer was a sophisticated buyer and was represented by his own broker is relevant to the factual issues of Buyer's justifiable reliance and contributory negligence but does not exonerate Thacker and Thompson from liability.

Reversed and remanded for further proceedings consistent with this opinion.

*Steven K.S. Chung* (*Walter G. Chuck,* a law corporation) on the reply brief (*Jeffrey Daniel Lau; Oliver, Lee, Cuskaden & Ogawa* on the opening brief) for appellant.

*Randall Y.S. Chung, Kevin P.H. Sumida,* and *Gary W.B. Chang* (*Clyde W. Matsui,* a law corporation) on the briefs for appellees Earl Thacker Co., Ltd., and Barbara Thompson.

---

[7]Neither does the record demonstrate Buyer's entitlement to judgment as a matter of law. There is at least one issue of material fact, *i.e.,* whether Thacker and Thompson failed to exercise reasonable care or competence in obtaining or communicating the false information.