**FEDERAL LAND BANK ASSOCIATION OF TYLER, Petitioner,**

**v.**

**William C. SLOANE, Lettie Sloane, and Robert C. Sloane, Respondents.**

**No. D–0307.**

Supreme Court of Texas.

Dec. 4, 1991.

Rehearing Overruled April 8, 1992.

G. Patrick Garrett, Oklahoma City, Okl., John L. Price, Center, Karen B. Jewell, Charles T. Newton, David M. Bond, Christopher W. Byrd, Houston, Ms. Rose Guerra Reyna, McAllen, for petitioner.

Blair A. Bisbey, Jasper, for respondents.

## OPINION

GONZALEZ, Justice.

The primary issues in this case are (1) whether the statute of frauds shields a bank from liability for negligently misrepresenting that it had approved a loan secured by real property; and (2) assuming that the statute of frauds does not apply, whether the prospective borrowers can recover damages for mental anguish attributable to the bank's alleged negligent misrepresentation. After a jury trial, the trial court rendered judgment for the prospective borrowers. The court of appeals affirmed in part and reversed and rendered in part. Specifically, the court of appeals held that the statute of frauds did not bar the claim, affirmed the part of the judgment awarding mental anguish damages, and reversed and rendered that part of the judgment awarding damages for lost profits. 793 S.W.2d 692. We reverse that part of the court of appeals' judgment with regard to the award of mental anguish damages and otherwise affirm. This cause is remanded to the trial court for rendition of a judgment that conforms with this opinion.

In early 1986, William, Lettie, and Robert Sloane had been out of the business of raising chickens for two years when they learned they could get a contract from Pilgrim's Pride to raise broilers for the company on the condition that they build new chicken houses on their farm.[1] On March 7, 1986, the Sloanes applied for a $141,000

---

1. A Pilgrim's Pride representative testified at trial that the company enters into contracts with its *growers* for an indefinite term, each party having the right to terminate upon 30 days' notice. Pursuant to the contract the company delivers the chicks and feed to the grower, and after a certain amount of time, pays a fee based on the amount of weight the chickens have gained.

loan from the Federal Land Bank Association of Tyler. During the application process, the Sloanes obtained an estimate of $105,000 for the costs of necessary equipment and the construction of two chicken houses. They also obtained a letter from Pilgrim's Pride stating that the company agreed to "feed out broilers" for the Sloanes once the houses were constructed according to specifications provided by Pilgrim's Pride. The Sloanes subsequently sent the construction estimate and the letter from Pilgrim's Pride to their loan officer at the bank.

Approximately a month after the Sloanes had applied for the loan, the loan officer informed them that the bank's board had approved the loan, and that the Sloanes could go ahead with site preparation work. The contractor hired by the Sloanes to build the new chicken houses contacted the bank's loan officer to see if he should begin construction, notwithstanding the pending nature of the loan. The loan officer said that there was "no problem," and that "there was not any reason for them not to continue at that point." (The bank officer disputes these statements; however, the jury resolved this issue in the Sloanes' favor, and the bank subsequently did not challenge on appeal the legal or factual sufficiency of the evidence supporting the fact).

In June 1986, the Sloanes had one of their old chicken houses demolished, and they paid approximately $9,000 for further site preparation. As the work progressed they supplied the bank with receipts. In August, 1986, the Sloanes received a letter from the bank denying their loan application, giving as reasons the fact that they failed to include two outstanding debts on their application, and that they incurred additional liability for a car purchase while the loan was being processed.[2] The Sloanes subsequently failed to obtain other financing. They then sued the bank alleging that the loan officer had negligently misrepresented that the bank would approve their loan application. Their claims included the financial and property damages suffered in preparing to build the chicken houses, the loss of the Pilgrim's Pride contract, and the mental anguish caused by the bank's allegedly negligent conduct.[3]

The case was tried before a jury which found that: (1) the bank negligently misrepresented to the Sloanes that the bank had approved their loan application; (2) the Sloanes justifiably relied on such misrepresentation; and (3) reliance upon such misrepresentation caused the Sloanes pecuniary loss. The jury assessed damages against the bank amounting to $26,500 for past and future monetary losses other than lost profits, $28,500 for past and future lost profits, and $15,000 for mental anguish.

The trial court rendered an $81,974.48 judgment for the Sloanes, which included $11,974.48 in prejudgment interest. The court of appeals subsequently held that there was no evidence of lost profits and certain other expenditures, and thus the court affirmed the balance of the judgment after reformation. The bank now asserts that, as a matter of law, the statute of frauds bars the Sloanes' cause of action for all damages. The Sloanes counter that their cause of action sounds in tort, and thus the statute of frauds does not apply. They also assert that the court of appeals

**2.** The Sloanes concede that the bank acted reasonably in denying their request for the loan.

**3.** The petition states:
  "More particularly, Plaintiffs expended approximately $15,000.00 in site preparation work for construction of the broiler houses, which were never built, and which has further resulted in a reduction in the value of their property because of the resulting damage to their hay pastures. Plaintiffs were further deprived of the opportunity to enter into a contract with Pilgrim's Pride Corporation for the feeding of broiler chickens, as a result of which they would in all reasonable probability have realized the profits of approximately $12,000.00 per year for at least five (5) years. Plaintiffs further suffered mental anguish and emotional distress and upset as the result of Defendant's negligent conduct, all to their damage in the total sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, for which they come now and sue."

erred in reversing the trial court's award of damages for lost profits.

█ The statute of frauds requires that certain specified classes of contracts be in writing to be enforceable. TEX.BUS. & COM. CODE § 26.01. The Sloanes do not claim that the bank agreed to loan them money and then breached that agreement; rather, they claim that the bank did not agree to loan them money, yet negligently misrepresented that it had made such an agreement. Moreover, the Sloanes do not seek damages for breach of the loan agreement never made, but for their reasonable reliance upon the bank's misrepresentation. Although a claim of negligent misrepresentation may not be used to circumvent the statute of frauds, under the circumstances of this case, the Sloanes' claim does not fall within the statute of frauds. To the contrary, the premise of the claim is that the Sloanes and the bank never reached an agreement, oral or written.

## NEGLIGENT MISREPRESENTATION

The Sloanes claim that the bank has a duty to use reasonable care whenever it provides information to its customers or potential customers, and that the bank breached this duty when it allegedly encouraged the Sloanes to incur expenses in reliance on the information related to their loan application. The Sloanes further allege that the bank misrepresented an existing fact rather than a promise of future conduct. Both the bank and the Sloanes rely on RESTATEMENT (SECOND) OF TORTS § 552 (1977) to define the scope of this duty. We agree with the Restatement's definition, as have several courts of appeal that have previously considered this question. *See, e.g., Cook Consultants, Inc. v. Larson,* 677 S.W.2d 718 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 690 S.W.2d 567 (Tex.1985), *on remand,* 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Traylor v. Gray,* 547 S.W.2d 644, 656 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Rosenthal v. Blum,* 529 S.W.2d 102, 104–05 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) (citing an earlier draft of the Restatement).

█ The elements of a cause of action for the breach of this duty are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. Issues substantially conforming to these elements were submitted to the jury, which returned a verdict favorable to the Sloanes. The bank makes no challenge to the sufficiency of the evidence of liability, so the remaining issue is what damages are available for this tort.

## DAMAGES

The Restatement provides damages for this tort as follows:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

RESTATEMENT (SECOND) OF TORTS § 552B (1977).

█ While the Sloanes adopt the Restatement's terminology to support the basic elements of their cause of action, they reject the language of Restatement section 552B which limits damages to pecuniary loss alone. Specifically, the Sloanes argue that this court should allow them damages for mental anguish. The Restatement advances several policy reasons for limiting damages, including a lower degree of fault

indicated by a less culpable mental state and the need to keep liability proportional to risk. RESTATEMENT (SECOND) OF TORTS § 552, comment a. There has been no trend to reject the pecuniary loss rule in what is essentially a commercial tort.[4] We decline to extend damages beyond those limits provided in Restatement section 552B.[5]

The Sloanes complain that they should receive damages for the profits they anticipated from the Pilgrim's Pride contract. As discussed above, Restatement (Second) section 552B allows for damages suffered in reliance upon negligent misrepresentation, but not for the failure to obtain the benefit of the bargain. Restatement (Second) §§ 552B(1)(a) & (2). The Sloanes would not have received the contract regardless of whether the misrepresentation was made. Under the legal theory of this section of the Restatement, they should not, therefore, receive the benefit of a bargain that would never have taken place. The sole reason the Sloanes did not get the Pilgrim's Pride contract is because the bank did not give them the loan money to build acceptable chicken houses. The Sloanes' claim to these damages is impermissibly predicated on giving them the benefit of the loan.[6]

For the foregoing reasons, we reverse the judgment of the court of appeals insofar as it includes an award for mental anguish. In all other respects, the judgment of the court of appeals is affirmed. We remand this cause to the trial court for rendition of judgment for $11,427.03 for past pecuniary losses other than lost profits, plus prejudgment interest.

MAUZY, Justice, concurring and dissenting.

I agree that the statute of frauds does not shield the bank from liability for negligent misrepresentation. I disagree, however, with the court's conclusion that damages for negligent misrepresentation can never include lost profits. I would hold that the Sloanes are entitled to recover damages sufficient to give them the benefit of their contract with Pilgrim's Pride.

**4.** We have not been referred to any case rejecting the limitation of damages in Restatement section 552B to pecuniary loss. On the other hand, a number of courts have adopted or cited with approval the Restatement section 552B delineation of damages available for negligent misrepresentation. *See, e.g., Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.,* 826 F.2d 424, 432–33 (5th Cir.1987); *Cunha v. Ward Foods, Inc.,* 804 F.2d 1418, 1423–26 (9th Cir.1986); *Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1501 (D.Colo.1988); *Robinson v. Poudre Valley Federal Credit Union,* 654 P.2d 861, 863 (Colo.Ct.App.1982); *Shaffer v. Earl Thaker Co., Ltd.,* 6 Haw.App. 188, 716 P.2d 163, 165–66 (1986); *Danca v. Taunton Savings Bank,* 385 Mass. 1, 429 N.E.2d 1129, 1134 (1982); *Law Office of L.J. Stockler, P.C. v. Rose,* 174 Mich. App. 14, 436 N.W.2d 70, 86 (1989); *Frame v. Boatman's Bank,* 782 S.W.2d 117, 122 (Mo.Ct. App.1989); *Onita Pac. Corp. v. Trustees of Bronson,* 803 P.2d 756, 763–65 (Or.Ct.App.1990); *First Interstate Bank of Gallup v. Foutz,* 107 N.M. 749, 764 P.2d 1307, 1309–10 (1988).

Several courts have allowed mental anguish damages in connection with a negligent misrepresentation without discussing section 552B of the Restatement or the policy reasons for limiting recovery to pecuniary loss. *See Lawyers Title Ins. v. Vella,* 570 So.2d 578, 585 (Ala.1990); *Dousson v. South Central Bell,* 429 So.2d 466 (La.Ct.App.1983), *writ not considered,* 437 So.2d 1135 (La.1983); *Little v. York County Earned Income Bureau,* 333 Pa.Super. 8, 481 A.2d 1194 (1984), *appeal dism'd,* 510 Pa. 531, 510 A.2d 351 (1986); *Vance v. Vance,* 408 A.2d 728 (Md. Ct. App.1979). At least two courts have held that damages for mental anguish are not available in a suit for negligent misrepresentation when there is no accompanying physical injury. *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989); *Crowley v. Global Realty, Inc.,* 124 N.H. 814, 474 A.2d 1056, 1058 (1984). The parties have not raised and we do not here resolve whether other sections of the Restatement allow recovery of mental anguish damages for negligent torts. *See Little,* 481 A.2d at 1201–02; *Hubbard v. Allied Van Lines, Inc.,* 540 F.2d 1224, 1230 (4th Cir.1976).

**5.** We confine our holding to common-law actions for negligent misrepresentation, and express no opinion on actions based upon a statute. *See Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984); *How Ins. v. Patriot Financial Services,* 786 S.W.2d 533 (Tex.App.— Austin 1990, writ denied).

**6.** The court of appeals' stated reason for denying these damages is that the Sloanes did not prove the loss of profits with requisite certainty. Because we hold that these damages are unavailable, we do not reach the issue of certainty of proof.

In a number of jurisdictions, benefit-of-the-bargain damages are clearly available in actions for fraudulent misrepresentation. *See, e.g., Freeman v. Bonnes Trucking,* 337 N.W.2d 871, 879 (Iowa 1983). Under the circumstances of this case, I disagree with the suggestion that negligent misrepresentation is a lesser cause for concern than fraudulent misrepresentation.

The distinction between negligent misrepresentation and fraudulent misrepresentation is a thin one. Texas courts have recognized the negligent misrepresentation action as a form of "remedial fraud." *See Rosenthal v. Blum,* 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.), and cases cited therein. Where circumstances are such that the defendant is presumed to know the facts to which his misrepresentation relates, a misrepresentation is fraudulent even if it is not made knowingly, willfully, or with actual intent to deceive. *See Dugan v. Jones,* 615 P.2d 1239, 1250 (Utah 1980).

I see no reason to maintain an artificial distinction between remedial fraud actions and actions for fraudulent misrepresentation. Here, the bank was in complete control of the Sloanes' loan application, and presumably knew the facts to which its misrepresentation related. Since the Sloanes altered their position in reliance on the bank's representations, they are entitled to damages based on the benefit-of-the-bargain rule. *See LeFlore v. Reflections of Tulsa,* 708 P.2d 1068, 1076 (Okla.1985). Thus, I would affirm the trial court's judgment on the jury verdict awarding the Sloanes damages for lost profits.