Maginn v. Norwest 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00485-CV







Michael Maginn and Kimberly Maginn, Appellants



v.



Norwest Mortgage, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 93-15339, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







 Appellants sued appellee for breach of written contract, breach of oral contract,
promissory estoppel, violations of the Deceptive Trade Practices Act ("DTPA"), negligence, gross
negligence, fraud, and negligent misrepresentation. The controversy arose when appellee
("Norwest") declined to offer appellants a mortgage loan. The trial court granted summary
judgment against appellants on the DTPA claim, ruling that appellants were not "consumers" for
purposes of the act. The trial court also granted summary judgment against appellants on the
contract and tort claims, ruling that they were barred by the statute of frauds. Appellants non-suited their promissory estoppel claim and appeal the final judgment below. We will affirm the
trial court's judgment in part and reverse and remand in part.



BACKGROUND


 Appellants applied for a mortgage loan from Norwest. In connection with their
application, appellants provided Norwest with a variety of credit information. In conducting its
credit check, on May 18, 1993, Norwest faxed a letter to appellants' real estate broker stating that
appellants' credit report was acceptable and that "final loan approval is contingent upon" a number
of factors. Appellants claim that Norwest informed them that the loan transaction, in an amount
exceeding $100,000, would close by the end of June 1993. On June 23, 1993, Norwest advised
appellants' real estate agent that it declined to provide a mortgage loan to appellants.



DISCUSSION


 The standards for reviewing a motion for summary judgment are well established: 
(1) the movant for summary judgment has the burden of showing that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Furthermore, when a trial court grants summary judgment
without stating the grounds, the summary judgment will be affirmed on any meritorious theory
set out in the motion. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).



DTPA Claims

 In their third point of error, appellants contend that the trial court improperly
granted summary judgment against their DTPA claims because they were in fact "consumers" for
purposes of the act. Appellants allege that, under the DTPA, they were consumers of various
banking services ancillary to the application for a Norwest mortgage loan.

 To qualify as a consumer under the DTPA, a person must have sought or acquired
goods or services by purchase or lease, and the goods or services must form the basis of the
complaint. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981). For purposes
of the DTPA, a loan is not a good or service. Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169,
174-75 (Tex. 1980). Therefore, we are called upon to answer whether Norwest's actions in
evaluating appellants' credit history and assisting in the closing of the home sale constitute
"services" under the DTPA.

 On a prior occasion, this Court has addressed the distinction between the objective
of a transaction and actions merely incidental to that objective:



All transactions involve human service to some extent, the cost of which is
included in the price of the transaction. Arguably, then all services in any
transaction are purchased "services" under the DTPA. Under this approach, any
service involved in a . . . loan transaction would give rise to DTPA consumer
status even though the actual . . . loan could not. . . .



First State Bank v. Keilman, 851 S.W.2d 914, 929 (Tex. App.--Austin 1993, writ denied) (quoting
FDIC v. Munn, 804 F.2d 860, 863-64 (5th Cir. 1986)). This Court further noted that, "the key
principle in determining consumer status is that the goods or services purchased must be an
objective of the transaction, not merely incidental to it." Keilman, 851 S.W.2d at 929 (emphasis
in the original).

 To support their argument that Norwest's ancillary banking services constituted
"services" for the purposes of the DTPA, appellants principally rely on Herndon v. First Nat'l
Bank, 802 S.W.2d 396 (Tex. App.--Amarillo 1991, writ denied). In Herndon, the borrower
claimed that he sought to acquire from the lender a variety of financial services. These services
included financial advice on when and where to obtain financing, whether to abstain from
borrowing, and how to structure various financial agreements of his business operations. The
court held that the Bank's financial advice constituted services for purposes of the DTPA. Id. at
399.

 Herndon is distinguishable from the instant case. Financial advice on when to
borrow, whether to borrow, and how to structure financial arrangements of business operations
is not typically incidental to the loan itself. Such financial advice constitutes an objective
independent of the loan transaction. However, in the instant case, the end and aim of appellants'
dealings with Norwest was to obtain a mortgage loan. Norwest's ancillary services served no
purpose apart from facilitating a mortgage loan. Therefore, we conclude that any services
provided by Norwest were, as a matter of law, incidental to the contemplated mortgage loan; they
were not an objective of the transaction. As such, appellants were not consumers for purposes
of the DTPA. We overrule point of error three.



Contract Claims

 In point of error one, appellants claim that the trial court erred in ruling that the
statute of frauds bars their breach of contract claims. Section 26.02(b) of the Texas Business and
Commerce Code (the "Code") provides:



A loan agreement in which the amount involved in the loan agreement exceeds
$50,000 in value is not enforceable unless the agreement is in writing and signed
by the party to be bound or by the party's authorized representative.



Tex. Bus. & Com. Code Ann. § 26.02(b) (West Supp. 1996). In support of their argument,
appellants maintain that (1) there existed a written instrument evidencing a contract between
Norwest and appellants to provide a mortgage loan; (2) the doctrine of promissory estoppel
prevents Norwest from raising a statute of frauds defense; (3) Norwest failed to comply with
§ 26.02(e) of the Code, and thus § 26.02(f) bars it from raising a statute of frauds defense; and
(4) Norwest failed to comply with § 26.02(g) of the Code and is thus barred from raising a statute
of frauds defense.



 Written Memorandum Evidencing a Contract

 Appellants argue that a letter from Paula Moss, an agent of Norwest, constituted
a written instrument evidencing a contract between Norwest and appellants to provide a mortgage
loan. Moss faxed the memorandum to appellants' real estate broker on May 18, 1993. The
memorandum indicated that appellants had made a loan application, that their credit was
acceptable, and that based on the information in the application, their income-to-debt ratio was
in line with FHA guidelines to qualify for a thirty-year mortgage loan in the amount of $105,000. 
The latter statement was made contingent on various factors, including further credit verifications.

 Whether a contract comes within the statute of frauds is a question of law. 
Bratcher v. Dozier, 346 S.W.2d 795, 796 (Tex. 1961). The statute of frauds does not require that
the contract itself be in writing. Instead, the written instrument merely furnishes written evidence
of a contract and its essential terms. EP Operating Co. v. MJC Energy Co., 883 S.W.2d 263,
267 (Tex. App.--Corpus Christi 1994, writ denied). The statute of frauds requires the written
agreement or memorandum to be complete within itself in every material detail and to contain all
of the essential elements of the agreement so that the contract can be ascertained from the writings
without resort to oral testimony. Cohen v. McCutchen, 565 S.W.2d 230, 232 (Tex. 1978).

 The Moss memorandum contains neither a promise, an agreement, nor a
commitment to loan appellants any money. The document merely states that appellants appear
to have good credit, but that further credit inquiries must be undertaken. Having examined the
"four corners" of the document, we conclude, as a matter of law, that the letter does not satisfy
the statute of frauds.



 Promissory Estoppel

 In claiming that Norwest is barred from raising a statute of frauds defense,
appellants evoke the promissory estoppel doctrine as exemplified in Cobb v. West Texas
Microwave Co., 700 S.W.2d 615 (Tex. App.--Austin 1985, writ ref'd n.r.e.); see also Nagle v.
Nagle, 633 S.W.2d 796, 800 (Tex. 1982). When a party makes an oral promise to sign a written
instrument complying with the statute of frauds, the promise will be enforced, provided the
promisor should have expected that the promisee would detrimentally rely on such promise. 
Cobb, 700 S.W.2d at 616. Appellants contend that (1) Norwest orally promised to later execute
a written instrument evidencing a contract to provide a mortgage loan, and (2) appellants relied
on such promise.

 In Cobb, the summary-judgment evidence suggested that there was a promise to
reduce the oral agreement to a written instrument. Id. at 616. In the instant case, taken in the
light most favorable to the nonmovant, the summary-judgment evidence suggests that Norwest
orally agreed to close the mortgage deal near the end of June 1993. However, there is nothing
in the summary-judgment evidence to suggest that Norwest orally agreed to reduce any such
promise to a written agreement. Therefore, we hold that the doctrine of promissory estoppel does
not defeat Norwest's statute of frauds defense.



 Section 26.02(e) & (f)

 Section 26.02(e) of the Code requires that written loan agreements involving more
than $50,000 contain a "merger" clause. See Tex. Bus. & Com. Code Ann. § 26.02(e) (West
Supp. 1996). Section 26.02(f) of the Code goes on to explain the consequences of failing to
adhere to § 26.02(e). If the written loan agreement has no merger clause, then § 26.02 "does not
apply to the loan agreement, but the validity and enforceability of the loan agreement and the
rights and obligations of the parties are not impaired or affected." Tex. Bus. & Com. Code Ann.
§ 26.02(f) (West Supp. 1996).

 Appellant contends that Norwest did not comply with § 26.02(e) because it failed
to include a merger clause. Therefore, appellants argue, § 26.02(f) removes the loan agreement
from the requirements of the statute of frauds. We disagree. By its own terms, § 26.02(e)
presupposes a written instrument. In the absence of a written agreement, any requirement of a
merger clause is nonsensical; oral agreements cannot "merge" into a written document which does
not exist.

 Section 26.02(f) must be read in conjunction with § 26.02(c) & (d) which prevent
written agreements from being controverted by parol evidence. Tex. Bus. & Com. Code Ann.
§ 26.02(c)(d) (West Supp. 1996). Examining the statute as a whole, we conclude that the penalty
for failing to comply with § 26.02(e) is to allow the written contract to be controverted by parol
evidence. We do not read § 26.02(f) as removing a loan agreement from the statute of frauds
when there is no merger clause in a non-existent written document. See Durish v. Channelview
Bank, 809 S.W.2d 273, 275 (Tex. App.--Austin 1991, writ denied) (statute should be construed
as a whole and not through an examination of isolated provisions).



 Section 26.02(g)

 Appellants argue that because Norwest failed to post notices as required by
§ 26.02(g), it is estopped from raising a statute of frauds defense. We disagree. Section 26.02(g)
of the Code provides:



All financial institutions shall conspicuously post notices that inform borrowers of
the provisions of this section. The notices shall be located in such a manner and
in places in the institutions so as to fully inform borrowers of the provisions of this
section. The Finance Commission of Texas shall prescribe the language of the
notice.



Tex. Bus. & Com. Code Ann. § 26.02(g) (West Supp. 1996). 

 Unlike § 26.02(e) & (f), § 26.02(g) does not prescribe any penalty for failure to
adhere to the statute. The Legislature chose to provide a penalty for the failure to comply with
§ 26.02(e), but it did not do so for the failure to comply with § 26.02(g). Hence, the Legislature
recognized the issue of a penalty for failing to comply with certain provisions of the statute. 
Examining the statute in its entirety, we conclude that the Legislature did not intend to withhold
the statute of frauds defense from financial institutions which failed to adhere to § 26.02(g).

 For the foregoing reasons, we overrule appellants' first point of error.



Tort Claims

 In point of error two, appellants claim that the trial court erred in ruling that the
statute of frauds bars their various tort claims. When tort claims have their nucleus in an alleged
oral contract which is unenforceable under the statute of frauds, the statute of frauds bars the tort
claims as well. Collins v. Allied Pharmacy Management, Inc., 871 S.W.2d 929, 936 (Tex.
App.--Houston [14th Dist.] 1994, no writ). Having found that appellants' tort claims had their
nucleus in the previously held unenforceable oral contract, the trial court ruled the tort claims
were barred as well.

 Appellants argue that their tort claims do not derive from any alleged breach of
contractual loan agreements by Norwest. Instead, appellants claim that Norwest has a duty to use
reasonable care whenever it provides information to its customers or potential customers. 
Appellants maintain that Norwest breached its duty when it allegedly caused appellants to incur
expenses in reliance on Norwest's representations that the loan deal would close in a few weeks.

 More specifically, appellants contend that Norwest assured them that the loan
transaction would close at the end of June 1993. Furthermore, appellants contend that as a result
of Norwest's representations, they gave notice to their landlord to vacate their apartment on June
30, 1993. Appellants concede that they were able to secure financing for their home purchase
shortly after Norwest declined to provide them with a mortgage loan. However, appellants insist
they incurred additional rental expenses and lost wages due to the delay in purchasing their new
home which appellants contend was the result of Norwest's misrepresentations.

 The summary judgment evidence, viewed most favorably to the nonmovant,
suggests that (1) Norwest represented to appellants that they would receive a mortgage loan by
June 23, 1993; (2) Norwest did not provide appellants with a mortgage loan; and (3) appellants
incurred additional rental and lost wage expenses resulting from the delay in purchasing their new
home caused by Norwest's misrepresentations.

 The instant case is remarkably similar to Federal Land Bank v. Sloane, 825 S.W.2d
439 (Tex. 1991). In Sloane, a jury found that the bank had represented to Sloane that it would
loan him money to renovate his farm. Relying on this representation, Sloane incurred expenses
upgrading his chicken coops. Eventually, the bank declined to loan Sloane the money. When
Sloane sued the bank on a negligent misrepresentation theory, the bank argued that the statute of
frauds barred the action because the grievance arose out of a contract dispute. The court
disagreed, noting:



The Sloanes do not claim that the bank agreed to loan them money and then
breached that agreement; rather, they claim that the bank did not agree to loan
them money, yet negligently misrepresented that it had made such an agreement
. . . . Although a claim of negligent misrepresentation may not be used to
circumvent the statute of frauds, under the circumstances of this case, the Sloane's
claim does not fall within the statute of frauds.



Id. at 442.

 Appellants' tort claims are nearly identical to those in Sloane. Irrespective of their
contract claims, appellants' alternative tort claims do not allege that Norwest contracted to loan
them money and then breached that contract. Instead, appellants allege that Norwest never did
agree to loan them money, but negligently misrepresented that it would. Because we find Sloane
to be controlling, we sustain appellants' second point of error.



CONCLUSION


 Having overruled appellants' first and third points of error, we affirm the trial
court's judgment with respect to the DTPA and contract claims. Insofar as we sustain appellants'
second point of error, we reverse the trial court's judgment with respect to appellants' tort claims
and remand the cause to the court below for proceedings not inconsistent with this opinion. The
remainder of the judgment is affirmed.



 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed in Part; Reversed and Remanded in Part

Filed: March 20, 1996

Publish