COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-437-CV

 

 

HARRIS FIBERGLASS                                                           APPELLANT

MATERIALS,
INC.

                                                   V.

 

VOUGHT AIRCRAFT                                                               APPELLEE

INDUSTRIES,
INC.

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

This is an appeal from a
summary judgment in favor of appellee Vought Aircraft Industries, Inc.  In two issues, appellant Harris Fiberglass
Materials, Inc. contends that the trial court erred by granting either a traditional
or no-evidence summary judgment on each of its claims against Vought.  We affirm.

 








 

Background

Lockheed Martin and Vought
entered into an agreement, contingent on the approval of a contract between
Lockheed and the U.S. government, for Vought to supply Lockheed with wings for
an aircraft.  In accordance with the
agreement, Vought shipped some of Lockheed=s tools and materials from South Korea in anticipation of government
approval of the project.  Harris agreed
to store the tools, hoping that Vought would subcontract with it to perform the
wing work.  Harris submitted two bids for
the wing work, each of which expired by its own terms.  For several years, while waiting for the
project to be approved by the government, Harris stored the tools for Vought,
and Vought paid for the storage.  Harris
also turned away other work and hired additional people in anticipation of
obtaining the subcontract.








After Lockheed told Vought
that it would not get the contract for the wing work, Vought told Harris that
it would not get the subcontract.  Harris
sued Vought, alleging that Vought had known for some time that it would not be
obtaining the contract from Lockheed and that it intentionally withheld this
information from Harris to Harris=s detriment.  Accordingly,
Harris brought claims for fraud, negligent misrepresentation, breach of
contract, and quantum meruit.  Vought
filed traditional and no-evidence motions for summary judgment, which the trial
court granted.

Standard of Review

Although when both
no-evidence and traditional summary judgment motions are filed we usually
address the no-evidence motion first, see Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004), here we will review the propriety of granting the
traditional summary judgment first because it is dispositive.  See Tex.
R. App. P. 47.1; Reynolds v. Murphy, 188 S.W.3d 252, 258 (Tex.
App.CFort Worth 2006, pet. denied) (op. on reh=g), cert. denied, 127 S. Ct. 1839 (2007).

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
Civ. P. 166a(b), (c).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798.

Analysis








Harris
contends that summary judgment on its fraud, negligent misrepresentation,
breach of implied contract, and quantum meruit claims is improper under either
the traditional or no-evidence standards. 
The gravamen of its fraud and negligent misrepresentation complaints is
that Vought continued to affirmatively misrepresent to Harris that it might
still enter into a contract with Lockheed for some time after it conclusively
knew that it would not and that Harris relied on these misrepresentations to
its detriment.  Harris=s breach of contract claim is based on its contention that an implied
contract existed between the parties based on industry custom, and its quantum
meruit claim is based on its contention that it performed a valuable service
for Vought by being ready and able to perform the wing work immediately upon
Lockheed and Vought entering into a contract.

Fraud and Negligent Misrepresentation
Claims








A person commits fraud by (1)
making a false, material misrepresentation (2) that the person either knows to
be false or asserts recklessly without knowledge of its truth (3) with the
intent that the misrepresentation be acted upon, (4) and the person to whom the
misrepresentation is made acts in reliance upon it (5) and is injured as a
result.  Formosa Plastics Corp. USA v.
Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998)
(op. on reh=g); Reynolds,
188 S.W.3d at 270.  The elements of a
negligent misrepresentation claim are that (1) the defendant made a
representation in the course of its business, or in a transaction in which it
had a pecuniary interest,  (2) the
defendant supplied false information for the guidance of others in their
business, (3) the defendant did not exercise reasonable care or competence in
obtaining or communicating the information, and (4) the plaintiff suffered
pecuniary loss by justifiably relying on the representation.  Fed. Land Bank Ass=n v. Sloane, 825 S.W.2d 439, 442 (Tex.
1991).  In both fraud and negligent
misrepresentation, reliance must be justifiable.  Ernst & Young, L.L.P. v. Pac. Mut.
Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Fed. Land Bank Ass=n, 825 S.W.2d at 442.

The summary judgment evidence shows that Vought did not
accept Harris=s July 27, 2001 and January 16, 2002 bids
to act as a subcontractor in connection with the inventorying, clean-up, and
painting of the tools that were shipped from South Korea.  In a January 25, 2002 letter, Vought asked
Harris to submit yet another bid segregating each of the tasks it had
previously bid on. In the letter, Vought=s procurement
manager Ty Colston said, AAs I was saying, it now looks like your
first part of the effort will be strictly a storage type function until actual
contract go-ahead to move forward with the tool clean up effort.@  Therefore, there is evidence that as of
January 25, 2002, Vought specifically informed Harris that any future work
other than the tool storage would be contingent on Vought getting the Lockheed
contract.








In addition, the summary judgment record contains
deposition testimony from Harris=s corporate
representative that Harris knew that Aultimately
starting the project depended on Lockheed Martin giving the go-ahead for the
project@ and that Harris
understood that from the Aget-go.@  Specifically, Harris=s President,
Vernon LeRoy Harris, testified that he understood that Vought could not give
the go ahead to Harris until Vought got the go ahead from Lockheed.   Vernon also testified that his understanding
of Harris=s initial task was that it would be to
unload the tools and store them and that they would not be cleaned until
Lockheed had authorized Vought to proceed. 

In response to the January 25, 2002 letter, Harris
submitted two additional bids to Vought on February 5, 2002; both of these bids
expired by their own terms.  On March 15,
2002, Vought sent Harris a letter reiterating that Harris=s only task was to
unload and store the tools.  Vought
presented summary judgment evidence that Harris knew as early as August 2004
that Lockheed had not authorized the project to go forward. 








Harris points to summary judgment evidence that Vought
affirmatively misrepresented to Harris during this same time (2002 through
August 2004) that it could still be awarded the Lockheed contract even though
Vought knew that was no longer a possibility and that Harris relied on these
misrepresentations in continuing to prepare for a possible contract with Vought
for the wing work.  However, there is
also evidence that Harris knew during that entire time that Vought and Lockheed
did not yet have a contract for the work and that no one from Vought guaranteed
Harris the work, either verbally or in writing. 
Harris=s admissions that it understood that
Vought could not authorize it to do any work until Vought had a contract with
Lockheed, and that Vought never had a contract with Lockheed, combined with
evidence of Vought=s failure to accept Harris=s specific bids
for the project, negate any claim that Harris=s reliance on
Vought=s
misrepresentations that a contract with Lockheed was about to be consummated
was justifiable.  Thus, the summary
judgment evidence negated at least one element of Harris=s fraud and
negligent misrepresentation claims. 
See Ernst & Young, 51 S.W.3d at 577; Fed. Land Bank Ass=n, 825 S.W.2d at
442; Prospect High Income Fund v. Grant Thornton LLP, 203 S.W.3d 602, 618
(Tex. App.CDallas 2006, pet. filed).  Harris=s contrary
knowledge that Lockheed had to first approve the project precludes any claim
that Harris reasonably relied on alleged misrepresentations by Vought.  See Coastal Corp. v. Atlantic Richfield Co.,
852 S.W.2d 714, 720-21 (Tex. App.CCorpus Christi
1993, no writ).

Implied Contract and Quantum Meruit Claims








Harris also argued that it had an implied contract with
Vought based on industry custom and a course of dealing between the
parties.  Specifically, Harris contends
that industry custom was to deliver tools only to an entity who did the
refurbish work.  Harris also points to
correspondence from Vought talking about when Harris started work, as
opposed to if it started work, as evidence of a contract between the
parties.

Whether an implied contract
exists is determined from the actions of the parties.  Haws & Garrett Gen. Contractors, Inc.
v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972).  An implied contract exists when the facts and
circumstances show a mutual intention to contract, i.e., a meeting of the
minds.  Id.  The determination of whether there is a
meeting of the minds must be based upon objective standards of what the parties
said and did, not on their alleged subjective states of mind.  Ervin v. Mann Frankfort Stein & Lipp CPAs,
L.L.P., No. 04-06-00438-CV, 2007 WL 2253476, at *8 (Tex. App.CSan Antonio Aug. 8, 2007, no pet.); CRSS Inc. v. Runion, 992
S.W.2d 1, 4 (Tex. App.CHouston [1st
Dist.] 1995, pet. denied).








Harris did not present any summary judgment evidence
supporting its industry custom argument; thus, there is no evidence of an
implied contract based on industry custom. 
And the actions of the parties objectively show a mutual intent to
contract only if and when Vought procured a contract with Lockheed.  Vought=s evidence that it
never accepted Harris=s bids, along with the evidence that
Harris knew it was not authorized to begin work until Vought consummated a
contract with Lockheed and until Lockheed gave Vought the Ago-ahead,@ contradicts
Harris=s claims of an
implied contract.  And the evidence
pointed to by Harris is consistent with the conclusion that Harris would be the
sole subcontractor for the wing work only if and when Vought
entered into a contract with Lockheed. 
Thus, summary judgment was proper on Harris=s implied contract
claims.

Summary judgment was also proper on Harris=s quantum meruit
claim.  To recover under quantum meruit,
a claimant must prove that (1) valuable services were rendered or materials
furnished, (2) for the person sought to be charged, (3) which services and
materials were accepted, used, and enjoyed 
by the person sought to be charged, (4) under such circumstances as
reasonably notified the person sought to be charged that the plaintiff in
performing such services was expecting to be paid by the person sought to be
charged.  Vortt Exploration Co. v.
Chevron USA, Inc., 787 S.W.2d 942, 944 (Tex. 1990); Residential Dynamics
LLC v. Loveless, 186 S.W.3d 192, 199 
(Tex. App.CFort Worth 2006,  no pet.).








Vought introduced summary judgment evidence conclusively
negating this cause of action.  Vought
showed that it paid for the only services provided by Harris:  the unloading and storage of the tools.  Although Harris contends that it performed a
valuable service to Vought by being ready and able to start the wing work as
soon as Vought entered into a contract with Lockheed, this evidence shows
nothing more than that Harris anticipated a future business opportunity.  Such an expectation cannot form the basis of
a quantum meruit claim.  Richter v.
Wagner Oil Co., 90 S.W.3d 890, 895 (Tex. App.CSan Antonio 2002,
no pet.); Peko Oil USA v. Evans, 800 S.W.2d 572, 576 (Tex. App.CDallas 1990, writ
denied).  Accordingly, we hold that the
trial court did not err by granting a traditional summary judgment on all of
Harris=s claims.  We overrule Harris=s first
issue.  Having determined that summary
judgment was proper under the traditional standard, we need not address Harris=s second issue
challenging the no-evidence summary judgment. 
See Reynolds, 188 S.W.3d at 258.

Conclusion

Having determined that the
trial court properly granted Vought=s traditional motion for summary judgment, we affirm the trial court=s judgment.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
DAUPHINOT, and WALKER, JJ.

 

DELIVERED: November 8,
2007











[1]See Tex. R. App. P. 47.4.