**NATIONAL CONSUMER COOPERATIVE BANK,**
**Plaintiff,**

v.

**George R. MADDEN, Jr., and Jack L. Ayers, Jr., Defendants.**

**Civ. No. 89–00045 DAE.**

United States District Court,
D. Hawaii.

May 22, 1990.

James N. Duca, Kessner, Duca & Maki, Honolulu, Haw., for plaintiff.

Jonathan L. Ortiz, Ortiz & Yamamura, Honolulu, Haw., for defendants.

DAVID A. EZRA, District Judge.

Before the court are several motions by defendant George R. Madden, Jr. ("Madden") brought pursuant to Fed.R.Civ.P. 56. These motions include three motions for summary judgment and three motions for partial summary judgment. The motions for summary judgment are based upon Madden's assertions that 1) plaintiff fails to state a claim; 2) plaintiff made an illegal loan; and 3) plaintiff has failed to name indispensable parties. The motions for partial summary judgment seek resolution of 1) the claim of overcubing; 2) the issue of punitive damages; and 3) the issue of defendant Madden's liability with respect to a $300,000 "second loan."

Also before the court is the request of plaintiff National Consumer Cooperative Bank ("National Consumer Co-op" or "the bank") for sanctions under Fed.R.Civ.P. 11.

On May 14, 1990, this court heard argument on Madden's various motions and National Consumer Co-op's request for sanctions. James N. Duca, Esq. appeared on behalf of National Consumer Co-op. Jonathan L. Ortiz, Esq. appeared on behalf of defendant Madden. *Pro se* defendant Jack L. Ayers, Jr. did not appear at the hearing.

The court has carefully considered the memoranda submitted in support of, and in opposition to, defendant Madden's motions, the case law contained therein, and coun-

sels' oral arguments as well as the records and pleadings on file in this action. For the reasons set forth below, the court denies Madden's motions for summary judgment, and denies National Consumer Co-op's request for Rule 11 sanctions.

## I. BACKGROUND

This litigation involves claims of fraud, misrepresentation, and conspiracy in the procurement of a loan from National Consumer Co-op.[1] The salient facts are somewhat cumbersome in light of the tangled corporate web that this action involves.[2]

In June 1987, National Consumer Co-op made a $1.3 million loan to Oahu Freight Association[3] ("OFA") and its two wholly owned subsidiaries, Kano Trucking Service, Ltd.[4] ("Kano") and OFA/California Cooperative, Inc.[5] ("Calif. Co-op").[6] At that time defendant Jack L. Ayers, Jr. ("Ayers") was president and a director of each of the corporations in the OFA group.

The purpose of the loan was to finance the purchase by OFA of the California assets of Pacific Basin Consolidators[7] ("PBC"). Madden was the president and owner of PBC at the time the loan was secured.[8] He also was a director of Kano.

National Consumer Co-op alleges that Madden and Ayers acted together fraudulently to induce the bank to make a loan to OFA, the proceeds of which flowed to Madden personally when PBC dissolved shortly after the closing of the loan. In particular, National Consumer Co-op alleges the defendants concealed from it the following material information:

1) That the purchase of PBC's operations by OFA was not an arm's length transaction;

2) That defendant Ayers stood to (and did) gain financially from OFA's purchase of PBC, because he owned nearly 25% of PBC's parent company, Century Three Freightways, Inc. ("Century");

3) That both defendants knew that the value of PBC transmitted to the bank through its finance statements reflected profits made by PBC as a result of an illegal billing process known as "overcubing," and therefore the future legitimate profitability of PBC could not be accurately estimated from the finance statements;[9]

4) That the accounting and preparation of financial statements for both buyer-borrower OFA and seller PBC were under the exclusive control of Interpool Advance Office and Data Processing Systems, Inc. ("Interpool"), a Hawaii corporation that Madden had incorporated and owned; and

---

1. National Consumer Cooperative Bank was chartered in 1976 under the National Consumer Cooperative Bank Act, 12 U.S.C. §§ 3001, 3011–3026, 3041–3051. The purpose of the bank was to make loans and provide specialized credit sources and technical assistance for not-for-profit cooperatives.

2. The court has prepared a diagram of the major entities directly or indirectly involved in this action. [Publisher's Note: See Appendix.]

3. OFA is alleged by Madden to be both 1) a non-profit eleemosynary corporation organized under Hawaii law and 2) a non-profit shippers association whose principal business is the shipment of freight from the west coast of the mainland U.S. to the ultimate consignee in Hawaii. National Consumer Co-op refers to OFA as a non-profit cooperative organized under Hawaii law and contends that OFA provided freight forwarding service for its members.

4. Kano is a Hawaii corporation that is engaged in the business of trucking.

5. Calif. Co-op is a Hawaii non-profit corporation which was created to succeed to PBC's business operations and to hold the PBC assets purchased with the loan.

6. Collectively, these three entities will be called "the OFA group."

7. PBC operated as OFA's primary "stuffing" agent in Oakland and Los Angeles, California. Essentially it was responsible for receiving freight destined for OFA members, consolidating the freight into ocean-going containers, and delivering the containers to steamship lines for shipment to Hawaii. It was a Hawaii corporation.

8. Prior to his direct ownership of PBC, Madden had been an indirect owner through his part ownership of Century, PBC's parent company.

9. Overcubing refers to the practice of listing a cubic foot measurement for a particular shipment in excess of the actual amount of space that the freight occupied. The result of this billing practice is that customers are overcharged for the freight.

5) That PBC, after the receipt of financial statements by the bank, but before the closing of the loan, incurred materially adverse declines in its financial condition.

In response to plaintiff's allegation that there are material facts which prevent the granting of summary judgment, Madden asserts the following:

1) the facts alleged by the plaintiff are not material, because National Consumer Co-op did not rely upon any of these matters to their detriment;

2) the alleged omissions of fact by Madden are not actionable, because as a non-party to the loan, he owed no duty to the bank;

3) the bank is estopped from asserting a cause of action to collect the proceeds of the loan, but its action in making the loan to OFA, an ineligible cooperative, was an *ultra vires* act beyond the scope of its powers under the National Consumer Cooperative Bank Act;

4) the bank failed to join the makers of the loan—OFA, Kano, and Calif. Co-op—and thus may not proceed in this action because complete relief cannot be accorded to all of the parties.

## II. *SUMMARY JUDGMENT STANDARDS*

Fed.R.Civ.P. 56 provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ If the moving party shows that no material fact exists, the opposing party may not defeat a motion for summary judgment absent any significant probative evidence tending to support his claim. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the moving party's evidence at trial. *T.W. Electrical Services,*

*Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626 (9th Cir.1987). Further, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

As stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> [T]he judge must ask not whether he thinks the evidence favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

## III. *DEFENDANT'S MOTIONS*

### A. *Madden's Motion for Summary Judgment for Failure to State a Claim*

■ The defendant must owe a duty to the plaintiff in order for a cause of action for fraud to succeed based upon allegations of material misrepresentations and omissions. *Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814 (1969). Madden asserts he was not a party to the loan, and thus he owed no duty to the bank to disclose any information to it.

■ When a party injects himself into a business transaction, however, he incurs a duty to disclose all material information necessary to prevent representations he makes, either directly or indirectly, from misleading other parties to the transaction. *See General Motors Acceptance Corp. v. Central National Bank*, 773 F.2d 771, 778 (7th Cir.1985) ("[e]ven in the absence of a confidential relationship, fraud may be based on a failure to disclose which together with an affirmative statement or act is misleading").

■ In the instant case, National Consumer Co-op has raised significant issues

of material fact with respect to the degree to which Madden was involved in the loan transaction. Chiefly, National Consumer Co-op points to an October 29, 1986 letter written to the bank by Madden over Ayers's signature proposing that the bank loan OFA $3,000,000 to retire its note from the prior sale of Kano to OFA and to purchase the assets of PBC.[10]

Based upon this letter, and upon other evidence of the behind the scenes role Madden played in convincing the bank through alleged omissions and misrepresentations to approve OFA's loan application, the court concludes that the issue of whether Madden owed a duty of disclosure to the bank is an issue which a finder of fact must resolve.

■ As a second argument in support of his motion, Madden cites *Giuliani v. Chuck,* 1 Haw.App. 379, 620 P.2d 733 (1980) for the proposition that a party asserting false representation and fraudulent concealment claims must show reliance upon those claimed misrepresentations and concealments. Although the facts of *Giuliani* differ significantly from the case at bar,[11] the court agrees with the general principle that reliance must be shown in order to sustain claims of fraudulent concealment and misrepresentation.

■ In his attempt to demonstrate that the bank did not rely upon any of his alleged misrepresentations or omissions, Madden correctly characterizes the deposition testimony of the bank's agents as indicating that the bank, in deciding whether to make the loan to OFA, did not directly rely upon the representations in the October 29, 1986 letter Madden authored on behalf of Ayers.

The bank asserts, however, that the October 29, 1986 letter caused it to rely upon other material misrepresentations indirectly made by the defendants. This contention is supported by the record currently before the court and is sufficient to raise a genuine issue of material fact to defeat the instant motion for summary judgment.[12]

In sum, the court finds that summary judgment is not appropriate at this juncture because the bank has demonstrated genuine issues of material fact as to Madden's role in OFA's successful solicitation of the loan enabling it to buy Madden's company, PBC. The circumstantial evidence the bank has brought forward in support of its theory that Madden was the undisclosed conductor of a complex scheme to defraud the bank meets the standard set forth in *Commodity Futures,* and therefore mandates that Madden's motion for summary judgment should be, and is, denied.

### B. *Madden's Motion for Summary Judgment Regarding Eligibility*

■ Madden asserts that OFA was not eligible as a matter of law to have obtained the loan in question from National Consumer Co-op. From this he reasons that he could not be held liable for any alleged misrepresentations or fraud because the loan was illegally made.

---

**10.** In the letter, Madden also represented that PBC's annual earnings were $252,000, which the bank asserts was a misrepresentation in light of PBC's alleged overcubing practice. The letter also failed to disclose other allegedly material facts, including the fact that his wife, Jean Madden, stood to gain financially from the transaction because of her 45% ownership share in the KTS promissory note.

**11.** In *Giuliani,* the court did not consider the situation presented here, where material omissions are alleged to have affected the decision by the bank to approve a loan. In that case, the failure of seller's attorney to prepare documents in a manner agreed to in a DROA did not constitute fraud when the buyers did not rely upon the misprepared documents. The case does not suggest any deliberate omissions of facts which misled any of the parties.

**12.** The information contained in the warranties given by PBC to OFA that its financial statements were accurate and disclosed all material facts at the time of the sale is an example of an alleged misrepresentation indirectly made to the bank by Madden. The bank asserts that Madden was responsible for the warranties and that he knew PBC's financial condition had changed between 1986 and 1987. The bank further asserts that Madden did not disclose this information until after the loan was closed and that he knew the bank would rely upon these warranties in considering the loan applications.

The court finds Madden's argument to be without merit. Even if the loan was patently illegal, there simply is no authority for the proposition that it was an "*ultra vires*" act which is no longer enforceable. Notwithstanding the fact that the bank is suing in tort, not on the loan, Madden's reliance upon an 1891 decision in support of his *ultra vires* defense is inappropriate, when such defense has been statutorily eradicated in every jurisdiction in the United States, including Hawaii.

The *ultra vires* doctrine has never been applied as a defense in tort litigation. *See* Commentary to the Model Bus. Corp. Act Ann. § 3.04. Accordingly, the court finds no merit in Madden's motion for summary judgment, and it is denied.

### C. *Madden's Motion for Summary Judgment for Failure to Name Indispensable Parties*

■ Madden contends that OFA, Kano and Calif. Co-op should have been joined as indispensable parties under Fed.R.Civ.P. 19, and that the failure to join these entities requires that the court grant summary judgment in his favor. As National Consumer Co-op correctly points out, however, Madden continues to wrongly assume that the relief the bank seeks is on the loan.

The bank is suing in tort, and one measure of tort damages under these circumstances is the unpaid principal of the loan as well as any accrued and unpaid interest on the loan. Madden's insistence that this means that the bank is suing on the loan is simply incorrect.

The court finds that as a matter of law, Madden has not demonstrated why the OFA group should be considered indispensable parties to this action, and that in fact they are not indispensable parties. Complete relief, if any, can be obtained through a judgment against the alleged tort feasors—defendants Madden and Ayers. *See Eldredge v. Carpenters 46, Etc.* 662 F.2d 534, 537 (9th Cir.1981); Fed.R.Civ.P. 19(a)(1). Accordingly, Madden's motion for summary judgment on this issue is also denied.

### D. *Madden's Motion For Partial Summary Judgment on the Claim of Overcubing*

■ Madden insists that because the bank is not suing the defendants on the issue of overcubing, he is entitled to summary judgment on the issue. The bank correctly asserts that one of the alleged misrepresentations made by defendant Madden is that the earnings of PBC were legitimate. In fact the earnings are in part alleged to be the result of the illegal practice of overcubing.

Defendant Madden again misses the thrust of the bank's theory. The issue is not whether he engaged in overcubing; the issue is whether he failed to inform the bank that the profits obtained by PBC were the result of alleged overcubing, and whether that failure contributed to the bank's decision to loan $1.3 million dollars to OFA. The court sees no issue upon which summary judgment can be granted related to overcubing. Accordingly, defendant Madden's motion for partial summary judgment is denied.

### E. *Madden's Motion for Partial Summary Judgment on the Issue of Punitive Damages*

■ Punitive damages may be awarded in products liability actions, even in cases based on strict liability. To justify an award of punitive damages, the plaintiff must

> prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

*Masaki v. General Motors Corp.,* 71 Haw. 1, ——, 780 P.2d 566, 575 (1989). "Clear and convincing" evidence is "that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established,

and requires the existence of a fact be highly probable." 780 P.2d at 574.

■ The inquiry should primarily focus upon the defendant's mental state, and to a lesser degree, the nature of his conduct. *Masaki*, 780 P.2d at 570. There must always be a "positive element of conscious wrongdoing." 780 P.2d at 571. Punitive damages may be awarded if there is a showing of "aggravated" or "outrageous" conduct. 780 P.2d at 570. "Punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment." 780 P.2d at 571.

■ To present the issue of punitive damages to the jury, there must be "sufficient evidence presented at trial to support a finding that the wrongdoer acted wantonly, oppressively, or maliciously." *Quedding v. Arisumi Bros., Inc.*, 66 Haw. 335, 661 P.2d 706 (1983). It follows that the court must find that there was sufficient evidence in which a reasonable jury could find by clear and convincing evidence that the defendant acted wantonly, oppressively, or maliciously. *Id.*

■ This court has already concluded that Madden is not entitled to summary judgment on the claims of fraud and misrepresentation set forth in the complaint, and thus has effectively concluded that there is sufficient evidence at this juncture of willful and wanton conduct on the part of Madden for a jury to consider.

The court does wish to note, however, that only as the facts develop at trial will the court be in a position to determine whether plaintiff National Consumer Co-op has placed sufficient facts before the jury to allow it to consider the issue of punitive damages. In light of the clear and convincing standard for punitive damages set forth in *Masaki*, the court will return to the issue of punitive damages at the time of trial. Defendant Madden's motion for summary judgment on the issue of punitive damages is, however, at this time denied.

F. *Madden's Motion For Partial Summary Judgment on the Issue of the Second Loan*

■ Madden asserts that the bank cannot link any activity on his part to a second loan for $300,000 made to OFA. Although Madden's statement may well be true, he has mischaracterized the bank's theory of his liability.

The bank theorizes that but for defendant Madden's prior activities in allegedly inducing the bank to make the loan to OFA, it never would have been in the position of trying to salvage its prior loan by lending OFA an additional $300,000 to keep its operations acquired from PBC afloat. The bank contends that the loss on the second loan was a foreseeable consequence of Madden's alleged tortious conduct. *See Halberstam v. Welch*, 705 F.2d 472, 487 (D.C.Cir.1983).

Defendant Madden cannot attempt to escape liability by alleging he wasn't on the scene at the time the second loan was made. *See Beltz Travel Service, Inc. v. Int'l Air. Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir.1980). One who engages in fraud, but is not involved in a subsequent overt act leading directly to additional damages, does not escape liability for those damages if they flow the initial fraudulent acts. *Id.* Although Madden has raised the issue of a possible superseding cause regarding the bank's need to lend the additional amount, that allegation alone does not support his motion for summary judgment, but rather highlights that there are genuine issues of material fact which must be resolved. Accordingly, Madden's motion for summary judgment on the issue of the second loan is also denied.

IV. *PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES*

■ Fed.R.Civ.P. 11 provides in part as follows:

The signature of an attorney or party constitutes a certificate that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or rever-

sal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction....

Rule 11 addresses the problem of frivolous filings and the problem of misusing judicial procedures as a tool for harassment. *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir.1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986).

A filing is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of "a competent attorney admitted to practice before the district court." *Id.* In *Zaldivar*, the court of appeals held that

Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.

*Id.* at 831. "The pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be," attained after reasonable inquiry. *Id.*

"Once a court finds that an attorney has violated Rule 11, it *must* impose sanctions." *Unioil, Inc., et al. v. E.F. Hutton, et al.*, 809 F.2d 548, 559 (9th Cir.1986).

In reviewing the various motions filed by Madden in this action, the court concludes that although his motions lack merit, the *Zaldivar* standard for imposing sanctions has not been met.

Madden's argument concerning the applicability of the *ultra vires* doctrine, for example, while contrary to established law, nevertheless represents an attempt to stretch the law beyond its boundaries as they currently exist. The court does not find this approach to be *wholly* frivolous when viewed in the context of an attorney's ethical duty to zealously advocate his client's case to the court. Accordingly, the court rejects the bank's request for sanctions with respect to these motions.

## CONCLUSION

For the reasons set forth above, the court denies Madden's motions for summary judgment, and denies National Consumer Co-op's request for Rule 11 sanctions.

IT IS SO ORDERED.

## APPENDIX

### DEFENDANT GEORGE MADDEN, JR.

**Interpool Advance Office & Data Processing Systems, Inc.**
"Interpool"
Wholly Owned by Madden
Prepared PBC's & OFA's Fin. Stmts.

**Century Three Freightways, Inc.**
"CENTURY"
Madden - 51% ownership interest
Ayers - 24.5% ownership interest

**Pacific Gateway Development Corp.**
"PGDC"
Madden - Director, President
Madden's Wife - 45% ownership
Now Dissolved - Formerly owned Kano

**Takahasi Bros. Trucking Serv.**
"TBTS"
Wholly Owned by Century
Richard Tanaka - President
Tanaka is Ayers's Brother-in-law

**Pacific Basin Consolidators**
"Pacific"
Wholly Owned first by Century,
then by Madden at time of sale
Madden - President

**OFA/California Cooperative**
"Calif. Co-op"
Ayers - President
Co-signer on loan
Wholly owned by OFA

**Kano Trucking Service, Ltd.**
"Kano"
Ayers - President, Madden - Director
Kano was a co-signer on loan
Wholly owned by OFA

**Oahu Freight Association**
"OFA"
Ayers - President
OFA was buyer of PBC
in the instant action

### DEFENDANT JACK AYERS, JR.