**ELLIOT MEGDAL AND ASSOCIATES, Elliot M. Megdal and Alana K. Megdal, Plaintiffs,**

v.

**HAWAII PLANING MILL, LTD., Defendant.**

**Civ. No. 91–00630 DAE.**

United States District Court, D. Hawaii.

Feb. 23, 1993.

**900**

Mark J. Bennett, Richard B. Miller, McCorriston Miho & Miller, Honolulu, HI, for plaintiffs.

Gary G. Grimmer, Steven M. Egesdal, Thomas R. Sylvester, Mark R. Fox, Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki, Honolulu, HI, Robert D. Triantos, Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki, Kailua–Kona, HI, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The Court heard Defendant's Motions for Partial Summary Judgment on February 8, 1993. Mark J. Bennett, Esq. appeared on behalf of plaintiffs. Thomas Sylvester, Esq. and Mark Fox, Esq. appeared on behalf of defendant. After reviewing the motions, the Memoranda in Support Thereof and in Opposition Thereto, and hearing oral argument, the Court GRANTS IN PART and DENIES IN PART Defendant's Motions for Partial Summary Judgment.

### I. Background

On August 8, 1989, Elliot Megdal and Associates ("Megdal") entered into a contract with Stephenson Construction ("Stephenson") for the construction of a shopping center, the Kopiko Plaza, on property owned by Megdal in Kona, Hawaii ("the contract"). Megdal contracted with Stephenson on the recommendation of John Parazette, the architect for the building.

Under the terms of the contract, the supply and erection of the steel building to be used for the Kopiko Plaza, as well as the electrical work, was to be handled on an allowance basis. That term was used, in contrast to a fixed-price basis, to mean that the price for the allowance items was to be determined on the basis of a post-contractual calculation of actual costs. The total scheduled value of the contract was $2,265,000. Megdal had earlier rejected Stephenson's proposal of a fixed-price contract for $2,365,000.

Megdal obtained financing from First Hawaiian Bank. As a condition of the loan agreement, Megdal was obliged to secure a performance and payment bond of value equal to the cost of the structure. Megdal secured such a bond from Hawaii Planing Mill, Ltd. ("HPM") for a premium of $23,594. That sum was apparently calculated as one percent of $2,265,000 plus tax.

Subsequently, Megdal, Stephenson, and Panzetta agreed to a change order designating Engineered Structures, Inc. ("ESI") to provide the steel structure, and Central Steel Construction ("CSC") to erect it. CSC contracted to do all of the project erection for approximately $150,000, roughly the same amount as the allowance that had been made for those services under the contract. In

1990, CSC left the job and did not complete the work. That default is the source of this dispute.

The departure of CSC made it clear that the project would not be completed on time. Megdal and Stephenson each contended that the other was responsible for any damages suffered as a result of the delay caused by CSC's default. Pursuant to the terms of the contract, which was a standard form agreement of the American Institute of Architects and contained a compulsory arbitration clause, Stephenson filed a demand for arbitration on June 12, 1990. Megdal filed a counterclaim on August 3, 1990 seeking, among other relief, delay costs and consequential damages.

On July 25, 1990, Megdal informed HPM that Stephenson had defaulted and demanded, pursuant to the bond agreement, that HPM pay all additional costs incurred by Megdal as a result of the delay. HPM responded that it would take no action prior to the arbitrator's ruling. Richard Miller, an attorney for Megdal, issued, and HPM declined, an invitation for HPM to participate in the arbitration. Sometime thereafter, Megdal demanded that Stephenson and HPM remedy certain punchlist work such as alleged defects in the roof and sewer lines. HPM refused contending they were not responsible.

The arbitrator's award was handed down on May 15, 1991. Precisely how that award is to be interpreted is also a disputed matter, but the award clearly requires Megdal to pay Stephenson $175,664.

On May 17, Stephenson filed a motion in the First Circuit Court of the State of Hawaii to confirm the arbitration award pursuant to Haw.Rev.Stat. §§ 658–8 and 658–12 (1985). Megdal filed a separate motion to clarify the award, contending that the award was ambiguous as to whether Stephenson was excused from performing the punchlist work. Stephenson contended that Megdal was estopped from arguing the punchlist issue since it ought to have been litigated in the arbitration. The court granted Stephenson's motion and denied Megdal's. Thereafter, Megdal paid Stephenson the amount awarded and a satisfaction of judgment was filed September 11, 1991.

Megdal commenced this action on November 11, 1991 alleging fraudulent misrepresentation (count I), negligent misrepresentation (count II), breach of contract (count III), tortious interference with contract and tortious conduct (count IV), unjust enrichment (count V), insurance code violations (count VI), and punitive damages (count VII). HPM filed separate motions for partial summary judgment on count III and all other counts.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. *But cf. Id.,* at 328, 106 S.Ct. at 2555 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the

movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)) (original emphasis).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289.

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.* These inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

### III. Analysis

■ A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state. *Davis v. Metro Prod., Inc.,* 885 F.2d 515, 524 (9th Cir.1989). Accordingly, Hawaii substantive law applies.

### A. Counts I and II: Fraudulent Misrepresentation

Counts I and II of the amended complaint allege fraudulent misrepresentation, fraudulent withholding of material information, negligent misrepresentation, and negligent withholding of material information.

Megdal alleges that he relied upon the bond's representation that it covered all the work, including the steel building and erection, in reaching his decision to enter an allowance contract rather than a fixed-price contract. He states that had he known HPM would not cover the allowance items he would have entered into a fixed-price contract with Stephenson. (Megdal Decl. at 10–14 [1].) Consequently, he says, he would not have paid the attorney fees he did, nor the arbitration award, nor the extra amounts paid during the arbitration. Megdal notes that the additional cost to him of entering a fixed-price contract, $100,000, was negligible in comparison to the additional liability he was exposed to under the terms of the agreement he actually entered.

In effect, Megdal alleges two sorts of fraud. First, he claims that the bond was fraudulent on its face since it was calculated on the basis of $2,265,000, the full price of the contract, and represented that it covered all the work. Second, he says HPM fraudulently failed to reveal its policy that it would not cover work done on an allowance basis. Megdal points to the declaration of Eric Higuchi, the bond administrator for HPM, stating that HPM had the capacity to state specifically on the bond whether there were items to be excluded. (Bennett Decl., Exh. 36 at 86.)

■ Under Hawaii law, a plaintiff alleging fraud must show: 1) a false representation, 2) made with knowledge of falsity or without knowledge as to their truth or falsity, 3) in contemplation of reliance, 4) reliance, and 5) damages. *Hawaii's Thousand Friends v. Anderson,* 70 Haw. 276, 768 P.2d 1293, 1301 (1989).

■ As a preliminary matter, HPM contends that Megdal has failed to make the

---

1. All citations are to the declarations attached to the briefs in chief unless otherwise indicated.

required showing of detrimental reliance. HPM argues that the arbitrator found that Megdal was responsible for CSC's default, for reasons independent of the coverage under the bond agreement. Consequently, HPM argues that its misrepresentation caused Megdal no damage since Megdal would have been liable to Stephenson regardless of the coverage under the bond agreement. That argument is without merit. Megdal alleges that had it known HPM's position as to the extent of coverage of the bond, Megdal would have entered into a fixed-price contract for $2,365,000. Had it done so, Megdal would have saved money paid to Stephenson in excess of the contract price, attorney fees for the arbitration, and the loss and delay damages for which it was ultimately found liable. HPM relies upon the following conclusion of law contained within the arbitrator's interim decision:

> But once employed by the contractor without objection, a supplier or subcontractor under the allowance provision becomes the contractor's responsibility as with any other supplier or subcontractor employed by the contractor.
>
> Nevertheless, under the particular fact situation in this case, the contractor acted as an agent for the owner in arranging use of his own license to enable the owner the benefit of using CSC for the building erection despite the Hawaii licensing law.

(Fox decl. exh. at 8.)

Even if the Court were to accept the factual findings and conclusions of the arbitrator's interim decision, a conclusion to which Megdal strenuously objects and is discussed at length below, the arbitrator's conclusion cannot bar Megdal's recovery since Megdal alleges that it would not have entered into an allowance-basis contract at all were it not for HPM's alleged misrepresentation. Construing facts in the light most favorable to Megdal, he has alleged a claim of detrimental reliance. *See, e.g., Nat. Consumer Coop. Bank v. Madden,* 737 F.Supp. 1108, 1113 (D.Haw.1990).

■ Citing *Kyles v. Lantis,* 39 Haw. 440 (1952), HPM next contends that Megdal's claims are barred by the rule that an alleged misrepresentation as to the legal effect of an agreement are not actionable. In *Kyles,* a case concerning the legal effect of a promissory note, the court stated:

> [T]he plaintiff further testified that as a basis of fraud the defendant misrepresented the legal effect of the note. But it is the well-settled general rule that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law. That rule is applicable to misrepresentations as to the legal effect of a note. *See Wicks v. Metcalf,* 83 Ore. 687, 163 Pac. 434.

*Kyles,* 39 Haw. at 440. Megdal challenges HPM's characterization of its alleged misrepresentation as one of law and not fact. They further contend that even if the Court categorizes the misrepresentation as one of law, the rule set forth in *Kyles* is not controlling since the *Restatement* no longer makes any distinction between factual and legal misrepresentations.

Though federal courts sitting in diversity are generally bound by state court interpretations of state law, if a court is convinced by "persuasive data that the highest court of the state would decide otherwise," *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), it can make its own independent interpretation. *New Hampshire Ins. Co. v. Vieira,* 930 F.2d 696, 701 (9th Cir.1991). In *Vieira,* the district court declined to apply a California state court decision, concerning the definition of property damages, that relied upon an overturned decision of the Minnesota Supreme Court. There is analogous evidence here.

RESTATEMENT OF TORTS (SECOND) § 525 provides:

> One who fraudulently makes a representation of fact, opinion, intention, *or law* for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

(Emphasis added.) Megdal argues, with considerable persuasiveness, that the modern trend among state courts is to follow the *Restatement* rule, which was adopted subsequent to *Kyles* in 1976, with respect to mis-

representations and abandon the distinction between statements of fact and law. *See, e.g., Criqui v. Pearl Music Co.,* 41 Or.App. 511, 599 P.2d 1177, 1179 (1979) ("the law no longer precludes actions based on fraudulent representations as to the law"); *Nagashima v. Busck,* 541 So.2d 783, 784 (Fla.App.1989); *Winton v. Johnson & Dix Fuel Corp.,* 147 Vt. 236, 515 A.2d 371, 373–75 (1986). He also argues that Hawaii courts have increasingly relied upon the Restatement for guidance in tort principles. *See, e.g., Shaffer v. Earl Thacker Co., Ltd.,* 6 Haw.App. 188, 716 P.2d 163, 165 (1986) (citing *Restatement* for elements of tort of negligent misrepresentation and referring to *Restatement* as formulation of the "developing standard of modern business ethics").

Furthermore, many state courts including the Oregon Supreme Court which the Hawaii Supreme Court relied upon in *Kyles,* 39 Haw. at 444 (citing *Wicks v. Metcalf, supra.*) have recognized the disingenuousness of preserving a distinction between misrepresentations of fact and of law. *See Peterson v. Auvel,* 275 Or. 633, 552 P.2d 538, 542 (1976). ("[R]eal estate brokers['] ... statements of opinion as to the legal consequences of the earnest money agreement which were knowingly false and made with the intent to induce the plaintiffs to agree to a larger sales price were actionable as fraudulent representations"). As noted by Prosser,

> The present tendency is strongly in favor of eliminating the distinction between law and fact as 'useless duffle of an older and more arbitrary day,' and recognizing that a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case. Most courts still render lip service to the older rule, but they have been inclined whenever possible to find statements of fact 'implied' in representations as to the law.

Prosser, Law of Torts (4th ed. 1971) 725 § 109. In light of the evidence before this Court, the Court declines to follow the rule set forth over 40 years ago in *Kyles.* Were the Supreme Court of Hawaii faced with the question today this Court is persuaded that it would abandon the holding in *Kyles* in favor of the principles established in the Restatement. Therefore, HPM's motion as to Megdal's first and second causes of action is denied.

■ As an alternative ground for the Court's ruling, the Court finds an independent basis for Megdal to proceed on his misrepresentation claims. Aside from the affirmative misrepresentations allegedly contained within the bond agreement and characterized as legal in nature by HPM, Megdal also alleges that HPM failed to disclose its policy of not covering items paid for on an allowance basis. Construing the facts in the light most favorable to Megdal at the time of bonding, HPM viewed the bond as covering only the fixed-price items in the Megdal–Stephenson contract. (Megdal, Exh. 36 at 86.) HPM failed to exercise its power to specifically state on the bonds that certain items were excluded from coverage. *Id.*

Under Hawaii law, liability for nondisclosure is governed by RESTATEMENT (SECOND) OF TORTS § 551 (1986). It provides:

> § 551. Liability for Nondisclosure
>
> . . . .
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . . .
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Id.*

HPM's alleged failure to inform Megdal as to its policy regarding allowance-items was a factual misrepresentation basic to the bond transaction. As such, Megdal's complaint states a valid cause of action for nondisclosure.

■ Megdal may also proceed on its claim for negligent misrepresentation. Under Hawaii law, one, who in the course of his

business, supplies false information for the guidance of others is subject to liability for pecuniary loss caused by justifiable reliance if he fails to exercise reasonable care. *See Shaffer v. Earl Thacker Co.*, 6 Haw.App. 188, 716 P.2d 163, 165 (1986) (adopting *Restatement* § 551); *Chun v. Park*, 51 Haw. 462, 501, 462 P.2d 905, 909 (1969). Having alleged a statement of false information as well as pecuniary loss, Megdal has set forth a valid claim for negligent misrepresentation. Under *Restatement* § 551, no distinction is made between statements of fact and law.

For the reasons stated above, the Court denies plaintiff's motion for summary judgment as to counts I and II of the complaint.

## B. *Count III: Breach of Contract*

Count III of Megdal's complaint alleges that HPM breached its contract with Megdal (the bond agreement) by (1) selling the bond, a contract of insurance, without having a license to do so; (2) refusing to assume its obligations under the bond relative to the defaults of Stephenson and Central Steel; (3) attempting to influence the arbitration; (4) failing to honor Megdal's demands under the bond to repair defects in the project; and (5) refusing to honor its obligations under the bond with regard to ESI (the supplier of the steel used in constructing the building) and Stephenson's liens.

Megdal's first argument cannot sustain a claim for breach of contract since it involves conduct prior to the agreement. Megdal does not contest this fact. Any separate liability HPM may have for insurance code violations is discussed below.

■ HPM contends that Megdal's second, fourth, and fifth arguments are barred by the doctrines of res judicata and collateral estoppel. HPM contends that the arbitrator determined that Stephenson had no liability to Megdal for the defaults of CSC. The preclu-

sive effect of this conclusion, HPM says, is to bar any recovery by Megdal for HPM's failure to perform its alleged obligations under the bond since any liability HPM might have is contingent on a finding that Stephenson was liable for CSC's default. In other words, HPM argues that its liability on the bond is coextensive with Stephenson's liability under the construction contract. If the arbitrator found that Stephenson had no liability, then HPM could have no liability to Megdal.

■ The first issue for the Court to consider is whether the arbitrator in fact determined that Stephenson had no liability to Megdal on the construction contract.[2] Megdal argues that the arbitrator could have found that Stephenson did default, but that Stephenson's valid claims under the contract exceeded the amount of his liability to Megdal.[3] In support of this claim, Megdal points out that Stephenson himself conceded that there were defaults of ESI for which he was responsible. (Bennett Decl. at ¶ 10.) Thus, Megdal states, the arbitrator's award must have involved some offsetting of claims. Megdal also argues that since there was no outright dismissal of its counterclaim against Stephenson, the arbitrator's decision can have no preclusive effect against Megdal in this action.

■ Under Hawaii law, the doctrine of res judicata provides that

[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been litigated in the first action but were not litigated or decided.

---

**2.** HPM devotes considerable attention to the preclusive effect given by *federal courts to state* court decisions under the Full Faith and Credit Clause *Memorandum in Support of Motion for Summary Judgment* at 11–21. That issue is not properly before the court. Here, the court, sitting in diversity, must determine what effect the Hawaii State Court would give to the arbitrator's decision.

**3.** Alternatively, Megdal argues, the arbitrator *may have* determined that *only* Stephenson was in default, but that its liability was offset completely by a valid claim it set forth in quantum meruit.

*Morneau v. Stark Enterprises, Ltd.*, 56 Haw. 420, 539 P.2d 472, 474–5 (1975). Collateral estoppel is an aspect of res judicata which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. *Id.*, 539 P.2d at 475.

HPM cites *Broder v. Hartford Accident & Indemnity Co.*, 106 F.Supp. 343, 346 (D.D.C. 1952), *New Paltz Central School District v. Reliance Insurance Company*, 97 A.D.2d 566, 467 N.Y.S.2d 937 (1983), *County of Rockland v. Aetna Casualty & Surety Co.*, 129 A.D.2d 606, 514 N.Y.S.2d 102 (1987), and *Burdick Associates Owners Corp. v. Indemnity Insurance*, 166 A.D.2d 402, 560 N.Y.S.2d 481 (1990) for the proposition that where a surety's obligation on a performance bond is conditioned upon default by the principal, an adverse determination of an owner's counterclaim against the principal for default on the contract operates as res judicata and collateral estoppel to preclude the owner from suing the surety on the bond.

That statement, and the cases cited in support of it, beg the question of whether the arbitrator's decision constituted a decision on the merits of the counterclaim of the owner, Megdal, against the principal, Stephenson.[4] None of the cases consider the question of an arbitrator's award that is ambiguous. To the contrary in *County of Rockland,* the prior arbitration conclusively determined the merits of the owner's counterclaim against the principal. 514 N.Y.S.2d at 103 ("[The] counterclaim was denied in its entirety by the arbitrators.") So too in *Burdick,* the court explicitly found that the arbitrator had denied the owner's counterclaim. 560 N.Y.S.2d at 481.

■ HPM says "the fact that the arbitrator did not specifically order Megdal's counterclaim to be dismissed is, at most, a technicality." (Amended Reply Memorandum, note 2, at 7.) Both res judicata and collateral estoppel, however, apply only to matters that

formed an essential basis for the decision sought to be preclusively applied. *Matter of Ellis,* 674 F.2d 1238, 1250 (9th Cir.1982). Put another way, a prior order cannot be preclusively applied to an issue as to which it is vague or ambiguous. This conclusion is supported by the fact that HPM declined to participate in the arbitration even though it seemed to understand that there were unresolved issues as to its own potential liability. (Bennett Decl. Exh. 12).

■ HPM further argues that regardless of what the arbitrator's ruling was, Megdal has already received all the benefits of that ruling to which it is entitled. Thus, HPM contends that even if the arbitrator's ruling included an offset, as Megdal argues it necessarily must have, then to allow Megdal to obtain damages on its valid claim would be to allow a double recovery. That argument is without merit. Had the arbitrator found Stephenson liable for the defaults of the subcontractor, then to allow Megdal to proceed would be to sanction a double recovery. Here, however, Megdal seeks to recover damages for the default of Stephenson, for which it has already paid, on its contract with HPM. Those alleged damages are not duplicative.

The preclusive effect of the arbitrator's decision notwithstanding, the issue still remains whether HPM's liability was in fact coextensive with that of Stephenson, as HPM claims. As an alternative basis for its ruling, the Court finds there is a general issue of material fact as to whether HPM made a fraudulent misrepresentation of fact sufficient to justify reformation of the contract to impose liability on HPM in excess of the liability of Stephenson.

■ A unilateral mistake may warrant reformation of a contract where it is accompanied by fraud on the part of the other party. *RESTATEMENT (SECOND) OF CONTRACTS* § 161 (1982); *Audio Fidelity Corp. v. Pension Ben. Guaranty Corp.,*

4. The text of the Arbitrator's decision read in relevant part:

Respondent, ELLIOT MEGDAL & ASSOCIATES, shall pay to Claimant, THOMAS L. STEVENSON DBA STEPHENSON CONSTRUCTION, the sum of $175,664.00 (ONE HUN-

DRED SEVENTY FIVE THOUSAND SIX HUNDRED SIXTY FOUR DOLLARS). Each party shall bear its' [sic] own attorneys' fees and costs.

(Arbitrator's May 15, 1991 Decision.)

624 F.2d 513, 518 (4th Cir.1980). Here, HPM allegedly stated that the bond covered Stephenson up to $2.265 million, the full price of the contract.[5] HPM also allegedly failed to disclose its own policy that allowance price items were not covered.

Restatement § 166 provides in relevant part:

> If a party's manifestation of intent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the recipient may reform the writing to express the terms of the agreement as asserted, ... if the recipient was justified in relying on the misrepresentation.

The Court finds, laying aside its conclusion that the Arbitrator did not necessarily decide the issue of Stephenson's liability to Megdal, there is a genuine issue of material fact as to whether HPM made a fraudulent misrepresentation to Megdal so as to justify reforming the contract to make HPM liable for CPC's default on allowance items, regardless of the principal's liability.

Under Hawaii law, the Court must enforce " 'the objectively reasonable expectations' of parties claiming coverage under insurance contracts, which 'are construed in accordance with the reasonable expectations of a layperson.' " *HIG v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 807 P.2d 1256, 1260 (1991).

It is far from clear whether an ordinary person reading the bond agreement would have concluded that HPM's liability was limited in anyway. The bond specifically states that it covers $2.265 million, the full price of the contract. Accordingly, the Court denies summary judgment as to count III of Megdal's complaint.

### C. *Count IV—Tortious Interference With Contract*

Count IV of Megdal's complaint alleges that HPM caused tortious and wrongful interference with contract, by submitting an affidavit during the arbitration stating that allowance work was the responsibility of the owner and not the contractor. Because, count III, alleging breach of contract, encompasses the same conduct, Megdal states that it has no objection to the dismissal of count IV. It is accordingly dismissed.

### D. *Count VI—Insurance Code Violations*

Megdal concedes that the portions of this count which allege independent causes of action for breach of the Unfair Claims Settlement Practices Act, § 431:13–103(a)(10) lack merit. *See Genovia v. Jackson National Life Insurance Co.*, 795 F.Supp. 1036, 1044–45 (D.Haw.1992) (no private enforcement of Article 13 of the Hawaii Insurance Code). Accordingly, Megdal's sixth count is dismissed to the extent it relies on Article 13.

HPM's motion to dismiss Megdal's claim for a permanent injunction enjoining HPM from acting as an unauthorized insurer is granted as well. "Courts of equity are without authority or jurisdiction to enjoin criminal acts solely on the basis of their criminality." *Marsland v. Pang*, 5 Haw.App. 463, 464, 701 P.2d 175 (1985).

HPM's motion with respect to Count VI is denied in all other respects. H.R.S. § 431:8–209 allows a court to grant attorney fees to a policyholder where the court determines an unauthorized insurer has improperly failed to make payment under the terms of its agreement. Section 431:8–203 provides that a contract of insurance effectuated by an unauthorized insurer in violation of article 8 is voidable by the insured. Liability under these articles is coextensive with HPM's liability to Megdal to the bond. To the extent that HPM is potentially liable to Megdal on the bond, as discussed above, an award of summary judgment would be premature at this point. Accordingly, HPM's motion is denied with respect to Megdal's claims based on Article 8.

---

5. HPM contends that the Court must assign no weight to any alleged misrepresentation contained within the language of the bond itself since such a rule would require insurers to cover any risk that the insureds claimed they believe was covered (unless the insurer could show that they specifically communicated to the contrary). That conclusion is illogical. All the law requires is that insurers not mislead insureds as to risks the insurer does not cover.

E.  *Count VII—Punitive Damages*

 HPM's motion for summary judgment on Megdal's claim for punitive damages is premature.  Exemplary damages may be awarded in actions for fraud, *Anderson v. Knox,* 297 F.2d 702 (9th Cir.1961), *cert. denied,* 370 U.S. 915, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1961), as well as in actions for breach of contract, *Cuson v. Maryland Cas. Co.,* 735 F.Supp. 966 (D.Haw.1990).  HPM's motion for summary judgment on Count VII is accordingly denied.

### IV.  Conclusion

For the reasons set forth above, the Court GRANTS Defendant's Motions for Summary Judgment as to (i) Count IV and (ii) the claims in Count VI based on Article 13 of the Hawaii Insurance Code and for injunctive relief.  The Court DENIES the motions in all other respects.

IT IS SO ORDERED.