**REVERSE and RENDER; and Opinion Filed December 14, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00151-CV

**INLAND WESTERN DALLAS LINCOLN PARK LIMITED PARTNERSHIP AND RPAI SOUTHWEST MANAGEMENT, LLC, Appellants**
**V.**
**HAI NGUYEN AND MAI NGUYEN, INDIVIDUALS, D/B/A ROMIE'S NAIL BOUTIQUE, Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-08114**

## MEMORANDUM OPINION ON REHEARING

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

We deny the motion for rehearing filed by Hai Nguyen and Mai Nguyen, doing business as Romie's Nail Boutique. On our own motion, we withdraw our opinion of August 29, 2018, and vacate the judgment of that date. The following is now the Court's opinion.

This case arises from a dispute over renewal of a commercial lease of space in a shopping center. Appellees Hai Nguyen and Mai Nguyen,[1] doing business as Romie's Nail Boutique, sued appellants Inland Western Dallas Lincoln Park Limited Partnership, their landlord (Inland or landlord), and RPAI Southwest Management LLC, which provided property management services

---

[1] Because appellees share the same surname, we refer to them by their first names in this opinion.

to Inland,[2] for fraudulent inducement and negligent misrepresentation in connection with renewal of the commercial lease. Appellants bring this appeal of the trial court's final judgment on a jury verdict finding appellants liable for fraudulent inducement and negligent misrepresentation, and awarding appellees $300,000 in damages and $19,972.60 in prejudgment interest. In six issues, appellants contend the trial court erred by allowing the jury to consider alleged misrepresentations by persons other than the individual alleged in appellees' pleadings to have made a misrepresentation; the evidence is legally and factually insufficient to support the jury's findings appellants fraudulently induced, and made negligent misrepresentations to, appellees and to support the damages awarded by the jury; the trial court erred by submitting an improper measure of damages for appellees' fraudulent inducement and negligent misrepresentation claims; the damages awarded by the jury are excessive; and the trial court erred by awarding prejudgment interest.[3]

For the reasons that follow, we reverse the trial court's judgment and render judgment that appellees take nothing on their fraudulent inducement and negligent misrepresentation claims against appellants.[4]

**Background**

On June 30, 2005, appellees purchased Romie's Nail Boutique, an established nail salon business in a busy shopping center. Appellees purchased the business for the full asking price of $270,000, because it was in "a good location for a nail salon" – a "really busy plaza" with "[a] lot of busy businesses." According to Hai, the nail salon's location was the primary factor in

---

[2] Lease documents indicate Inland Western Dallas Lincoln Park, L.P. was "Owner" of the property subject to the lease, and "Inland Southwest Management, LLC" was managing agent for "Owner."

[3] Appellants preserved their complaints in a Motion for Directed Verdict, Second Amended Motion Nothwithstanding the Verdict (JNOV), and First Amended Motion for New Trial.

[4] Because we resolve this appeal on the ground the evidence is legally insufficient to support the jury's finding that appellants engaged in fraudulent inducement and the jury's award of damages on appellees' negligent misrepresentation claim, we need not address appellants' other complaints. *See* TEX. R. APP. P. 47.1.

appellees' decision to purchase it. Inland, as landlord, permitted appellees to assume the nail salon's lease, and appellees, as assignees, executed an assignment and assumption of lease on August 19, 2005. The assigned lease term began in 2002 and expired on December 31, 2007. This original lease granted appellees the option to renew the lease for two five-year terms under substantially the same terms and conditions as the original lease, excepting rent, which would be based upon then prevailing market rates for similarly situated properties. To exercise the option to renew, the lease required the tenant to "notify Landlord in writing of its intention to renew no later than [120] calendar days prior to the expiration date of the then current term of [the] Lease." The lease also provided, "Tenant shall not be entitled to rely on any representations . . . of Landlord other than those expressly set forth in this lease."

Appellees did not notify appellants in writing of appellees' intention to renew the lease in 2007. Rather, in May or June of 2007, Hai called Jason Kasal, an Inland leasing manager, and told Kasal that appellees "would like to renew the lease." According to Hai, Kasal responded, "Okay, I'll work on that. I'll send you the proposal[.]" Although Kasal did not forward the renewal documents to Hai until October 8, 2007, Hai was not "upset by the delay in Mr. Kasal getting back to [him]." Hai testified he trusted Kasal's representations "because [Kasal was] a special lease person. He specialize[d] on it. So, I believed him." The proposed 2008 lease included a provision which granted appellees the exclusive right to operate a nail salon in the shopping center. The parties executed the proposed 2008 lease, with a term beginning on January 1, 2008, and ending on December 31, 2012 (the 2008 lease). The 2008 lease granted appellees the option to extend the lease for one additional five-year period following expiration.

Hai testified he called Kasal on May 22, 2012, because the 2008 lease expired at the end of the year. Hai told Kasal he wanted "to renew the lease again," and Kasal told him he would "work on that and . . . send [Hai] the proposal." Hai testified,

I told him that I would like to renew the lease. And he said, okay, I'll work on that. I'll send you the proposal. So I thought it just could be the same as in 2007. He's wait [sic] for like another four months to send me the proposal.

Hai was not concerned when he did not hear from Kasal in the months following the May 22, 2012 phone call because Kasal "took a long time" in 2007 to send the proposal. Hai also thought Kasal was "a busy man and maybe he's real busy and he took his time to send [Hai] the proposal." Hai testified he trusted and relied on Kasal's representation he would send Hai the 2013 lease renewal documents. Hai did not provide written notification to Kasal of appellees' intent to exercise the option to renew the lease, and Kasal did not request or otherwise acknowledge the 2008 lease provision requiring written notification.

Kasal assigned the 2013 lease renewal to Selina Johnson, a leasing agent who reported to him. According to Johnson, no specific Inland employee was responsible for lease renewals in the shopping center, and lease renewal work was shared between the employees based on their current work load. Johnson testified there was "no method to the madness other than shuffling out the workload depending on what the workload [was] with [their] team."

Johnson called Hai in early August 2012 and informed him the 120-day deadline to provide written notification to exercise the option to renew the 2008 lease had expired. Johnson could not recall why she first contacted Hai about the 2013 lease renewal in August of 2012, a month after the July 1 deadline to provide notice of intent to exercise the option to renew the lease under the same terms and conditions as the 2008 lease. According to Johnson, whether Inland contacted a tenant prior to the expiration of the deadline to exercise an option to renew a lease was decided on a "case-by-case" basis. Johnson conceded that if the landlord wanted to renegotiate the terms and conditions of a lease, it was in the "best interest of [the] landlor[d] for tenants not to timely exercise [their] right to renew."

Johnson asked Hai to send a written request to renew the lease. In an August 10, 2012 email to appellees, Johnson stated, "I know that we spoke last week regarding your upcoming renewal. Just wanted to see when we may finalize renewal terms." By letter dated August 15, 2012, Hai provided written notice of appellees' intent to exercise the option to renew the 2008 lease for a "5 years [sic] term and the additional option for another 5 years [sic] term thereafter." Hai testified that Johnson subsequently called him and said, "you're late . . . [s]o we terminate[d] your option of the lease. . . . So we're going to write up a brand new lease for you."

Johnson testified she told Hai that appellees had no right to renew the lease under the same terms and conditions as the 2008 lease because they did not give timely written notice of intent to exercise the option to renew. By letter dated September 7, 2012, Johnson notified appellees "the option was not exercised in a timely manner so therefore it [was] considered null and void." Johnson's September 7 letter proposed a lease for a five-year term commencing on January 1, 2013, and expiring on December 31, 2018. The proposed lease terms did not include an exclusivity provision. Johnson's letter concluded, "If you are in agreement, please confirm and we will prepare an amendment incorporating the terms set forth above, together with such modifications as might be necessary to update your lease to the current form."

In a September 11, 2012 email to Johnson, Hai stated appellees had reviewed Johnson's "renewal letter" and decided "to take this advantage [sic] to renew the lease for another five (5) year term." Hai also asked "if there is any option on this renewal after it's expired in December 2018 like the last term we had?" Ten days later, Johnson notified appellees by email that she would "need to get a 90 day landlord recapture right here in order to submit the proposal" and asked if appellees were "good to go with this." Hai responded on October 1, 2012, indicating appellees were "OK with the landlord's decision to move forward on the renewal of the lease," but questioning whether there was "any other option" than the "90 day landlord recapture." By letter

dated October 31, 2012 to Inland, Hai requested that Inland reconsider the landlord recapture provision in paragraph seven of the 2013 lease so that appellees would have "a chance to stay for another five (5) year lease[.]"[5] The landlord recapture provision was not removed from the proposed 2013 lease.

Johnson testified that appellees' exclusive right under the 2008 lease to operate a nail salon in the shopping center "absolutely" was a "valuable right for a tenant." According to Johnson, Kasal did not direct her to add the landlord recapture provision to, or remove appellees' exclusivity right from, the 2013 lease. Rather, the proposed 2013 lease was "presented up the ladder on renewal terms" and decided by a "committee," which was "[her] team." According to Hai, appellees signed the proposed 2013 lease, because they "had no choice."

By letter dated April 22, 2015, Inland notified appellees it was exercising its right to recapture the premises and terminate the 2013 lease. Hai testified that appellees attempted but failed to find a comparable lease space in which they could operate Romie's Nail Boutique. Unable to "find space to replace the space [they] lost when [Inland] terminated [appellees'] lease," appellees purchased another existing nail salon business for $220,000. According to Hai, the value of Romie's Nail Boutique was $300,000, and appellees had received offers to purchase the business for that amount and more; but after appellants terminated the 2013 lease, the value of Romie's Nail Boutique was "zero."

Hai testified appellees' written notice to exercise the option to renew the 2013 lease would not have been late if Kasal had not stated in May of 2012 that he was sending Hai the lease renewal documents. Hai testified he "[was] not suing on the lease," but, rather, "because [appellants] made misrepresentations to [him] that caused [him] not to timely renew the lease[.]" Johnson agreed

---

[5] Although Hai's October 31, 2012 letter noted that the 2013 lease omitted the exclusivity provision that was included in the 2008 lease, his sole request to Johnson was to remove the landlord recapture provision.

that appellees "had a right to rely on the truthfulness of what [she] said," and were "entitled to rely" on Kasal's representation that he would "send [Hai] the renewal paperwork." Johnson, however, testified that the 2008 lease contained provisions stating that (1) even if a party to the lease waived consent or approval of an act by the other party, that consent would not be deemed to waive or render unnecessary consent or approval of any subsequent similar act, (2) the lease contained the entire agreement between the parties and could be modified only by a written agreement signed by the parties, and (3) appellees were not entitled to rely on any representations or warranties by appellants other than those set out in the lease.[6] In Johnson's opinion, in renewing the 2013 lease, "it would [not] be fair" for Hai to rely on the same procedures that the parties followed for the 2008 lease renewal.

The trial court submitted a charge to the jury that consisted of four questions. In response to questions one and three, respectively, the jury found appellants liable for fraudulent inducement and negligent misrepresentation. In response to questions two and four, the jury awarded mitigation damages of $210,000 and property damage of $300,000 on each claim. The trial court rendered judgment on the jury's verdict, awarding appellees damages in the amount of $300,000, and prejudgment interest in the amount of $19,972.60, without specifying whether the judgment was based on appellees' fraudulent inducement or negligent misrepresentation claim.

## Standards of Review

Because they are dispositive to this appeal, we consider only appellants' complaints (1) in their second point of error that the evidence is legally insufficient to support the jury's finding that appellants fraudulently induced appellees, and (2) in their fourth point of error that the trial court submitted an improper measure of damages on appellees' negligent misrepresentation claim and

---

[6] In closing argument, appellants' counsel argued to the jury that, pursuant to the 2008 lease, appellees were not "entitled to rely on any representation or warranties of landlord other than expressly set forth in this lease."

the evidence is legally insufficient to support the damages awarded by the jury on appellees' negligent misrepresentation claim.

A party challenging the legal sufficiency of the evidence supporting an adverse jury finding on an issue on which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). In evaluating the legal sufficiency of the evidence to support a finding, we determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied). We view the evidence in a light most favorable to the finding, crediting favorable evidence if reasonable jurors could, while disregarding all evidence to the contrary, unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 807, 827. So long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the fact-finder. *Id*. at 822. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam). However, if the evidence is "so weak that it only creates a mere surmise or suspicion" that a fact exists, it is regarded as no evidence. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc*., 434 S.W.3d 142, 156 (Tex. 2014).

Any ultimate fact may be proved by circumstantial evidence. *Hoffmann v. Dandurand*, 143 S.W.3d 555, 559 (Tex. App.—Dallas 2004, no pet.) (ultimate fact is one that is essential to cause of action and would have direct effect on judgment); *see also Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). An ultimate fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Blount v. Bordens, Inc.*,

910 S.W.2d 931, 933 (Tex. 1995) (per curiam). However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla. *Id.*

As to appellants' complaint the trial court submitted an improper measure of damages on appellees' negligent misrepresentation claim, damages must be measured by a legal standard, and that standard must be used to guide the jury in determining what sum would compensate the injured party. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex. 1973); *Transitional Entity LP v. Elder Care LP*, No. 05-14-01615-CV, 2016 WL 3197160, at *6 (Tex. App.—Dallas May 27, 2016, no pet.) (mem. op.). The trial court's charge should enable the jury to make an award of damages on proper grounds and correct principles of law and should "limit the jury's consideration to the specific facts that are properly a part of the damages allowable." *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 862, 863 (Tex. App.—Amarillo 1983, no writ). Whether the trial court applied an improper measure of damages is a question of law subject to de novo review. *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 452 (Tex. App.—Dallas 2010, pet. denied).

**Fraudulent Inducement**

In their second point of error, appellants assert the evidence is legally insufficient to support the jury's affirmative finding in response to question one of the charge that appellants fraudulently induced appellees.[7] To establish a claim for fraudulent inducement, the plaintiff must prove the following elements of fraud as they relate to an agreement between the parties: (1) the defendant made a material misrepresentation that was false, (2) the defendant knew the misrepresentation was false when made or made the misrepresentation recklessly as a positive assertion without knowledge of its truth, (3) the misrepresentation was intended to be acted upon by the plaintiff,

---

[7] In their second point of error, appellants also challenge the legal sufficiency of the evidence to support the jury's finding that appellants made a negligent misrepresentation. In our original opinion, we concluded the evidence was legally insufficient to support the jury's finding that appellants made a negligent misrepresentation because there was no evidence appellees justifiably relied on any misrepresentation by Kasal. Because we conclude based on our analysis of appellants' fourth point of error that there was legally insufficient evidence to support the jury's finding that appellees suffered damage from any negligent misrepresentation, we need not address whether the evidence is legally sufficient to support the jury's finding that appellants made a negligent misrepresentation.

–9–

and (4) the plaintiff actually and justifiably relied on the misrepresentation and suffered injury. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302–03 (Tex. App.—Dallas 2009, no pet.).

Appellees were required to show appellants knew a misrepresentation was false when made or made the misrepresentation recklessly as a positive assertion without knowledge of its truth.[8] While "slight circumstantial evidence" of fraud, when considered with a breach or promise to perform, can be sufficient to support a finding of fraudulent intent, *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (per curiam), the evidence presented must have been relevant to the defendant's intent at the time the promise was made. *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Intent tends to be a fact question within the province of the trier of fact because it "so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *see also Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 567 (Tex. 2016). Evidence of intention not to perform that is "so weak that it creates only a mere surmise or suspicion of its existence . . . constitutes no evidence" and will not support a verdict. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992)

Appellees' fraudulent inducement claim was based on Kasal's representation in a telephone call with Hai that he would "work on" and "send [Hai] the proposal" for the 2013 lease renewal.[9] Appellees do not contend there was direct evidence that Kasal knew his representation was false when made or that he made the representation recklessly without knowledge of its truth. Rather,

---

[8] Because the issue of scienter is dispositive on appellees' fraudulent inducement claim, we need not reach whether the evidence supports the jury's findings as to the other elements of a claim for fraudulent inducement, *see* TEX. R. APP. P. 47.1.

[9] Appellants argue in their first point of error that because appellees' pleadings specifically name only Johnson as the source of the alleged misrepresentations that are the subject of their claims, they cannot recover damages for alleged misrepresentations by Kasal. Appellees contend Kasal's alleged misrepresentations were properly the subject of the trial court's judgment because appellants did not specially except to appellees' pleadings, their original petition gave fair notice of their claims with respect to any misrepresentations by Kasal, and claims based on any misrepresentations by Kasal were tried by consent. We conclude, *infra*, that appellees did not establish all of the elements of a claim for either fraudulent inducement or negligent misrepresentation. Accordingly, we need not consider whether Kasal's representations were properly the subject of the trial court's judgment.

–10–

they argue the following "circumstantial evidence support[ed] the jury's finding as to scienter or recklessness": (1) Kasal made the representation on behalf of appellants, (2) Kasal "directed Ms. Johnson as her superior in her declaring the requested extension as null and void," (3) Kasal was "on the committee that added the demand for the right of recapture" to be added to the lease, and (4) "the failure of Mr. Kassal (sic) to appear at trial–without any explanation."

Appellees were required to present evidence that, at the time Kasal made the representation, he did so "with the intent to deceive and with no intention of performing as represented." *Formosa Plastics Corp.*, 960 S.W.2d at 48. A mere failure to perform a promise is not evidence of fraud. *Id.* Thus, the mere fact that Kasal said he would send the 2013 lease renewal documents to Hai, but failed to do so, is not evidence of scienter or recklessness. *Id.*

The circumstantial evidence relied upon by appellees does not establish the requisite intent. There is no evidence that Kasal assigned appellees' 2013 lease renewal to Johnson with the intent to change the terms and conditions of appellees' lease, or impede appellees' exercise of the option to renew the 2013 lease on the same terms and conditions as the 2008 lease. The evidence does not support appellees' claim that Kasal "directed Ms. Johnson as her superior in her declaring the requested extension as null and void," as appellees claim. Rather, Johnson testified that not only was she unaware Kasal told Hai he would "send [Hai] the proposal," she did not even know Kasal had spoken with Hai about the 2013 lease renewal. Hai's testimony corroborated Johnson's testimony that she was unaware of Kasal's representation. Hai testified he did not tell Johnson he had previously spoken with Kasal about exercising the option to renew the 2013 lease; and Hai's August 15, 2012 and October 31, 2012 letters to Johnson did not mention Kasal or any previous attempt to exercise the option to renew the lease. The record is void of evidence Kasal participated in the decision to declare appellees' attempt to exercise the option to renew the lease "null and void" for lack of timely written notice. Nor is there evidence Kasal participated in the decision to

add the landlord recapture right provision to, and remove the exclusivity provision from, the 2013 lease.

There is not a scintilla of evidence Kasal told Hai he would "send [Hai] the proposal" knowing the statement was false when made or made recklessly as a positive assertion without knowledge of its truth. Because appellees offered no evidence establishing the scienter element of a claim for fraudulent inducement, we conclude the evidence is legally insufficient to support the jury's answer to jury charge question number one. *See Bradford v. Vento*, 48 S.W.3d 749, 756 (Tex. 2001). Accordingly, we resolve appellants' second point of error as to appellees' fraudulent inducement claim in their favor, reverse the trial court's judgment to the extent it was based on appellees' fraudulent inducement claim, and render judgment appellees take nothing on their fraudulent inducement claim. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Res. Corp.*, 299 S.W.3d 106, 124 (Tex. 2009) (concluding that, generally, when evidence is legally insufficient to support judgment, appellate court renders judgment trial court should have rendered).

**Negligent Misrepresentation**

The jury found in response to question three of the charge that appellants made a negligent misrepresentation. Because it answered question three affirmatively, the jury was asked in question four of the charge to determine:

> What sum of money, if any, if paid now in case, would fairly and reasonably compensate Plaintiffs for its [sic] damages, if any, that were proximately caused by Defendants' negligent misrepresentation?
>
> A. Mitigation Damages
>
> Reasonable and necessary expenses incurred to replace 28 months of the 5-year lease renewal after termination of the lease by the Defendants on August 22, 2015.
>
> . . . .

–12–

B. Property Damage

> What is the difference in the market value of Romie's Nail Boutique immediately before termination of the lease by Defendants on August 25, 2015, 28 months before the end of the 5-year renewal period, and immediately after the termination?

> "Market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

> Do not reduce the amount, if any, in your answer because of the mitigation damages above, if any. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

. . . .

The jury awarded $210,000 in mitigation damages and $300,000 in property damage.

In their fourth point of error, appellants contend the trial court instructed the jury on an improper measure of damages, the damages awarded by the jury have "no correlation or relationship" to the correct measure of damages, Hai's testimony in support of the awarded damages was opinion testimony with no supporting facts, and, even if the trial court submitted the proper measure of damages, the evidence is legally or factually insufficient to support the verdict.[10]

*Damages Recoverable for Negligent Misrepresentation*

To establish a claim for negligent misrepresentation, the plaintiff must prove: (1) the defendant made a representation in the course of its business or in a transaction in which it had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648,

---

[10] In their fourth point of error, appellants also complain about question two of the charge, pertaining to damages relating to appellees' claim for fraudulent inducement. Because we have determined the evidence was legally insufficient to support the jury's finding that appellants fraudulently induced appellees, we need not address appellants' complaints in point of error four relating to damages awarded in connection with appellees' fraudulent inducement claim. *See* TEX. R. APP. P. 47.1.

653–54 (Tex. 2018). Damages are a necessary element of a claim for negligent misrepresentation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Van Duren v. Chife*, No. 01-17-00607-CV, 2018 WL 2246213, at *10 (Tex. App.—Houston [1st Dist.] May 17, 2018, no pet.).

Compensation is the chief purpose of a damages award in a tort case. *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 655 (Tex. 2016). Indeed, the supreme court has recognized that the "basic reason underlying rules for the ascertainment of damages for any tortious act is a fair, reasonable, and proper compensation for the injury inflicted as a proximate result of the wrongful act complained of." *Id.* (quoting *Pasadena State Bank v. Isaac*, 228 S.W.2d 127, 128 (Tex. 1950)). Compensation is "reasonable and proper" if it is "sufficient to place the plaintiff in the position in which he would have been absent the defendant's tortious act." *Id.* Compensation through an actual-damages award "functions as 'an instrument of corrective justice, an effort to put the plaintiff in his or her rightful position.'" *Id.* (quoting 1 Dan B. Dobbs, *Law of Remedies* § 3.1, at 281 (2d ed. 1993)).

"Actual damages are those damages recoverable under common law," *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997), and may be either direct or consequential, *J & D Towing, LLC*, 478 S.W.3d at 655. Consequential damages are "'those damages which result naturally, but not necessarily,' from the defendant's wrongful acts," *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (per curiam) (quoting *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring)), and "need not be the usual result of the wrong." *Arthur Andersen & Co.*, 945 S.W.2d at 816. However, they must be foreseeable, directly traceable to the wrongful act, and result from the act. *Id.* If the claimed consequential damages are "too remote, too uncertain, or purely conjectural, they cannot be recovered." *J & D Towing, LLC*, 478 S.W.3d at 655 (quoting *Arthur Andersen & Co.*, 945 S.W.2d at 816).

Direct damages are intended to "compensate for a loss that is the necessary and usual result of the tortious act." *id.*, and "compensate the plaintiff for a loss that is conclusively presumed to have been foreseen by the defendant from his wrongful act," *Arthur Andersen & Co.*, 945 S.W.2d at 816. Direct damages for claims based on a misrepresentation can be measured in two ways— out-of-pocket and benefit-of-the-bargain. *Id.* at 817; *see also Sonnichsen*, 221 S.W.3d at 636. Out-of-pocket damages are derived from a restitutionary theory and "measure the difference between the value of that which was parted with and the value of that which was received." *Sonnichsen*, 221 S.W.3d at 636. Benefit-of-the-bargain damages, which are based on an expectancy theory, "evaluate the difference between the value that was represented and the value actually received." *Id.*

Although both measures of direct damages are available for some misrepresentation claims, such as common law fraud, *see Sonnichsen*, 221 S.W.3d at 636, a plaintiff may not recover benefit-of-the-bargain damages for a negligent misrepresentation claim. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam). Rather, the damages recoverable for a negligent misrepresentation are:

> [T]hose necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including
>
> > (a) the difference between the value of what he received in the transaction and its purchase price or value given for it; and
> >
> > (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

*Sloane*, 825 S.W.2d at 442 (adopting RESTATEMENT (SECOND) OF TORTS § 552B); *see also BDO USA, LLP v. Litex Indus., Ltd.*, No. 05-15-00358-CV, 2016 WL 3198503, at *6 (Tex. App.— Dallas May 26, 2016, no pet.). "Pecuniary loss" includes "money and everything that can be valued in money." *BDO USA, LLP*, 2016 WL 3198530, at *6. The plaintiff must establish that he "suffered an injury that is distinct, separate, and independent from the economic losses recoverable

–15–

under a breach of contract claim." *CCE, Inc. v. PBS & J Constr. Servs., Inc.*, 461 S.W.3d 542, 550 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 502–03 (Tex. App.—Dallas 2008, no pet.) ("Repudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim.").

### *Appellees' Claimed Damages*

Appellants complain the damages submitted by the trial court in question four of the charge were an improper measure of damages for a negligent misrepresentation.[11] The facts underlying appellees' negligent misrepresentation claim are that Kasal misrepresented he would send documents relating to the renewal of the 2008 lease; because of Kasal's misrepresentation, appellees did not comply with their contractual duty to exercise in writing their option to renew the 2008 lease for an additional five-year term and were required to accept the 2013 lease, which contained less favorable terms; and after appellants exercised their right to recapture under the 2013 lease, appellees were deprived of twenty-eights months in the leased premises.[12]

Assuming Kasal made a negligent misrepresentation upon which appellees justifiably relied, appellees were entitled to recover actual damages consisting of out-of-pocket expenses as well as "pecuniary loss suffered otherwise as a consequence" of their loss of a guaranteed right to the leased premises for a period of five years. *Sloane*, 825 S.W.2d at 442. The amount of any loss would be determined as of the date the lease was terminated. *See Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 238 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (concluding damages for negligent misrepresentation could be determined on date of demolition of property because

---

[11] Appellants preserved this complaint by objecting, during the charge conference, that appellees were not entitled to recover benefit-of-the-bargain damages, the "damages submissions" were "not pursuant to any statute, any case," and the damage questions were "not in conformance with the law" and by challenging the measure of damages in their second amended motion for JNOV and their amended motion for new trial.

[12] Appellees do not argue, and the facts do not support, that appellants breached either the 2008 lease or the 2013 lease.

"[p]rior to that date, the extent of injury, if any, was uncertain and speculative"). Appellees attempted to quantify their damages through evidence of (1) the value of Romie's nail salon immediately before and after appellees terminated the 2013 lease, and (2) the amount appellees paid in 2015 to acquire a new nail salon after they were unable to find a suitable replacement leased space for Romie's nail salon.[13]

*Property Damage*

The trial court awarded appellees $300,000, which was based on the "property damage" found by the jury. The jury was instructed that "property damage" was the difference in value of Romie's nail salon immediately before and after appellants terminated the 2013 lease.

As actual damages, appellees could recover their out-of-pocket expenses and pecuniary loss suffered as a result of a misrepresentation by Kasal. However, any impact on the value of Romie's nail salon due to the termination of the 2013 lease thirty-two months after it was signed does not reflect what appellees' lost—twenty-eight months of operating time in the leased space. Indeed, appellees concede in their brief that the requested property damage submitted to the jury was expectancy, or benefit-of-the bargain, damages. Benefit-of-the-bargain damages are not recoverable on a negligent misrepresentation claim. *D.S.A., Inc.*, 973 S.W.2d at 663–64; *Sloane*, 825 S.W.2d at 443.

We conclude the "property damage" instruction in question four of the charge was an improper measure of actual damages suffered by appellees due to a negligent misrepresentation by Kasal. Accordingly, we resolve appellants' fourth point of error in their favor as it relates to the trial court's award of property damage, reverse the trial court's award of $300,000 for property

---

[13] Hai also testified that his income from Romie's nail salon was $15,000 per month. However, question four of the charge did not ask the jury to determine appellees' lost income or lost profits. Further, there was no evidence of whether this was gross or net income, the expenses of running Romie's nail salon, or of appellees' net income from the new nail salon. However, even assuming appellees had profits of $15,000 a month from Romie's nail salon and no profits from the new nail salon, lost profits from operating in the leased location would be benefit-of-the-bargain damages, *see Transitional Entity LP*, 2016 WL 3197160, at *6, and not recoverable on a negligent misrepresentation claim. *D.S.A., Inc.*, 973 S.W.2d at 663–64; *Sloane*, 825 S.W.2d at 433.

damage, and render judgment that, to the extent appellants sought to recover property damage, they take nothing on their negligent misrepresentation claim.

*Mitigation Damages*

In addition to "property damage," the trial court instructed the jury on the alternate theory of "mitigation damages." We, therefore, must also consider whether appellees are entitled to recover based on the jury's alternative award of $210,000 for "mitigation damages." *See Hernandez v. Sovereign Nation Tejas*, 343 S.W.3d 162, 174 n.4 (Tex. App.—Dallas 2011, pet. denied) (concluding that, when judgment is reversed on appeal, prevailing party may seek recovery under alternative theory and appellate court would consider sufficiency of evidence to support jury's awards of damages under alternative theory in charge); *see also Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

The jury was instructed that "mitigation damages" were the "[r]easonable and necessary expenses incurred to replace 28 months of the 5-year lease renewal after termination of the lease by the Defendants on August 22, 2015." We have concluded the proper measure of damages based on this record are appellees' out-of-pocket expenses incurred due to the misrepresentation, calculated at the time the 2013 lease was terminated, and any pecuniary losses suffered by appellees as a consequence of any misrepresentation. Accordingly, the "mitigation damages" submitted by the trial court is the proper measure of damages for appellees' negligent misrepresentation claim.

Appellants contend that, even if the jury was instructed on the proper measure of damages, the evidence is legally insufficient to support the jury's award and awarding appellees the cost of

–18–

a new nail salon amounted to a financial windfall.[14] The jury's award was based on Hai's testimony that, after the 2013 lease was terminated, appellees could not find a suitable location to lease for Romie's nail salon and, therefore, purchased a new nail salon.[15] The evidence, therefore, established that appellees parted with something of value, $210,000, to pay for the new nail salon. However, there was no evidence of the value of the new nail salon that appellees received in return. Further, there was no evidence the new nail salon was worth less than the amount paid by appellees. Accordingly, there was no evidence that the value of what appellees received was less than the value they paid, and the evidence was legally insufficient to establish appellees suffered out-of-pocket damages by purchasing the new nail salon.

Finally, there was no evidence that the purchase of the nail salon was a "pecuniary loss suffered otherwise as a consequence of" appellees' justifiable reliance upon a misrepresentation by Kasal. At the time Kasal made the alleged misrepresentation, it was foreseeable that, if appellees failed to timely exercise in writing their right to renew the 2008 lease, they could lose the right to stay in the leased space for five additional years and could lose the benefits of operating a nail salon in that particular location. However, there was no evidence it was foreseeable at the time Kasal made the alleged misrepresentation that, if appellees signed a lease with a landlord recapture provision and appellants chose to exercise their rights under that provision, appellees would purchase a new nail salon. Appellees' decision to purchase a new nail salon was "too remote, too uncertain, or purely conjectural" at the time of any misrepresentation, and appellees cannot recover their costs for doing so. *See J&D Towing LLC*, 478 S.W.3d at 655.

---

[14] Appellants preserved this complaint by moving for direct verdict on the ground that there was no evidence of "value departed with" or "value received" and by challenging the legal sufficiency of the evidence to support the awarded damages in their second amended motion for JNOV and their amended motion for new trial.

[15] Hai testified appellees paid $220,000 for the new nail salon. However, appellees' counsel requested in closing argument that the jury award $210,000 in mitigation damages based on the purchase of the new nail salon, and that was the amount awarded by the jury.

We resolve appellees' fourth point of error in their favor to the extent they challenge the legal sufficiency of the evidence to support the trial court's award of "mitigation damages" and render judgment appellants recover nothing on their claim for mitigation damages.

## Conclusion

We reverse the trial court's judgment and render judgment that appellees take nothing on their fraudulent inducement and negligent misrepresentation claims against appellants.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

170151HF.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

INLAND WESTERN DALLAS LINCOLN
PARK LIMITED PARTNERSHIP AND
RPAI SOUTHWEST MANAGEMENT,
LLC, Appellants

No. 05-17-00151-CV      V.

HAI NGUYEN AND MAI NGUYEN,
INDIVIDUALS, D/B/A ROMIE'S NAIL
BOUTIQUE, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-15-08114.
Opinion delivered by Justice Fillmore,
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that:

Appellants Hai Nguyen and Mai Nguyen, Individuals, d/b/a Romie's Nail
Boutique take nothing on their claims against appellees Inland Western Dallas
Lincoln Park Limited Partnership and RPAI Southwest Management, LLC.

It is **ORDERED** that appellant Inland Western Dallas Lincoln Park Limited Partnership
and RAPI Southwest Management, LLC recover their costs of this appeal from appellee Hai
Nguyen and Mai Nguyen, Individuals, d/b/a Romie's Nail Boutique.

Judgment entered this 14th day of December, 2018.